THE STATE OF OHIO, APPELLEE, *v.* McCLELLAN, APPELLANT.

[Cite as State v. McClellan, 12 Ohio App. 2d 204.]

(No. 6349—Devided December 20, 1967.)

*Mr. Harry Friberg*, prosecuting attorney, *Mr. Melvin L. Resnick* and *Mr. James E. McCormick*, for appellee.

*Mr. Jas. Slater Gibson* and *Mr. William N. Thomas*, for appellant.

HUNSICKER, J. On June 12, 1967, there was filed in the Court of Common Pleas of Lucas County, a petition for post-

conviction relief in behalf of John Carter McClellan, who, theretofore, had been convicted in that county of murder in the first degree, without a recommendation of mercy. That conviction was processed by way of appeal through the Court of Appeals, the Supreme Court of Ohio, and the Supreme Court of the United States.*

After these unsuccessful appeals, the petition for post-conviction relief was presented to the Court of Common Pleas of Lucas County and, on July 21, 1967, that court entered the following order:

"Upon consideration of the petition for post-conviction relief, the files, the transcript and the records of minutes in this case, the court finds that the files, transcript and the records show that the matters complained of in subparagraph (A) thru (E) of the petition were determined by the trial court and upon motion of the defendant for a new trial filed and heard on September 25, 1965, and overruled on that date and by statement of defense counsel as to the same matters having been presented in the Court of Appeals, Supreme Court and on petition for certiorari in the United States Supreme Court, and that as to all of these issues the matter is res judicata.

"As to subparagraphs (F) and (G) of the petition, the court finds that there are no issues of fact warranting a post-conviction hearing and finds that as a matter of law that there was no denial or infringement of the defendant's constitutional rights so as to render judgment either void or voidable.

"The court therefore finds to its satisfaction that there was no denial or infringement of the constitutional rights of the defendant and that the relief sought in the petition to vacate is denied and the petition is dismissed with the costs taxed against the petitioner; that a copy of the proceedings herein be made and furnished to the court, to the state and to counsel for the defendant and made a part of the record in this case, all at petitioner's costs."

The above order is now before this court for review on questions of law, pursuant to a notice of appeal duly filed.

The petition for post-conviction relief sets out, in paragraph 3, six separate grounds for the relief requested. They

---

*See 6 Ohio App. 2d 155. Motion for leave to appeal (40370) overruled, November 2, 1966. Certiorari denied, April 24, 1967, U. S. , 18 L. Ed. 2d 462.

are designated (A), (B), (C), (D), (E), (F) and (G), with its subparagraphs (1), and (2) with its subparagraphs (a), (b) and (c).

In the transcript of proceedings, counsel for the appellant, McCellan, admits that, in the several appeals from the judgment of conviction, the matters set out in paragraph 3, subparagraphs (A) through (E), were claimed as error in such appeals and were decided unfavorably to the appellant, McClellan, in each instance. It is the judgment of this court that such claims can no longer be asserted in this case. This rule is set out in *State* v. *Perry*, 10 Ohio St. 2d 175, where the court said in the syllabus:

"7. Constitutional issues cannot be considered in postconviction proceedings under Section 2953.21 *et seq.*, Revised Code, where they have already been or could have been fully litigated by the prisoner while represented by counsel, either before his judgment of conviction or on direct appeal from that judgment, and thus have been adjudicated against him.

"8. The Supreme Court of Ohio will apply the doctrine of *res judicata* in determining whether postconviction relief should be given under Section 2953.21 *et seq.*, Revised Code.

"9. Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was *raised or could have been raised by the defendant at the trial*, which resulted in that judgment of conviction, *or on an appeal* from that judgment."

We, thus, have to consider only sections (F) and (G) in the petition for post-conviction relief. Those sections, in their principal claims, say there was a denial of a right to be tried by an impartial jury because only those jurors were accepted, who had previously declared their approval of capital punishment; and the sentence of death by electrocution is cruel and unusual punishment and is prohibited by the Constitution of the United States (Article VIII, Amendments) and the Constitution of Ohio (Section 9, Article I). We shall direct our attention to these latter claims to determine whether they raise an issue which warrants a post-conviction hearing.

Section 2945.25(C), Revised Code, says that one of the

causes of challenge of a prospective juror is that "his opinions preclude him from finding the accused guilty of an offense punishable with death." The contention of McClellan is that he was entitled to a jury made up, at least in part, of those who did not accept death as a permissible penalty under the law of this state. This claim is, thus, related to the right of the state of Ohio to declare the policy which it has followed since its founding. If that policy is to be changed, it must be done by the Legislature, not the courts.

Under the law of Ohio, a juror with a bias in favor of capital punishment is just as unfit to serve on a jury as one who will refuse to vote for the death penalty, if properly convinced that the evidence warrants such a vote. What McClellan wanted was not an impartial jury, but a jury with a prejudice in his favor.

Although Ohio has no case in point, other courts have passed on this subject. *Turberville* v. *United States,* 303 F. 2d 411; *United States* v. *Puff,* 211 F. 2d 171; *Massey* v. *State,* 222 Ga. 143, 149 S. E. 2d 118.

All law students in the beginning of their study of the law relating to crimes learn of the many offenses that were punished by death under early Anglo-Saxon jurisprudence. In the colonies and, especially, after independence, few offenses were punishable by death; treason, murder, rape, and arson were, usually, the only offenses where the extreme penalty was permissible. In England, at the beginning of the 19th century, over two hundred offenses were capital crimes. See: A Century of Law Reform, Chapter II, written by Sir Harry B. Poland, and printed by The McMillan Co., 1901.

On September 6, 1788, the Northwest Territory, at its first organizational meeting, enacted a law defining murder, which said:

"If any person or persons shall with malice aforethought, kill or slay another person, he, she, or they so offending, shall be deemed guilty of murder, and upon conviction thereof shall suffer the pains of death." I Laws of the Northwest Territory, Chapter VI, page 13.

Thereafter, at the first session of the Third General Assembly of the state of Ohio, 3 Ohio Laws, Chapter 1, Section 2, there was enacted a similar law defining murder.

The crime of murder has at all times in this state been punishable by death; however, a provision that a recommendation of mercy would prevent the death penalty being imposed was first enacted by the Ohio Legislature on April 23, 1898. The provision thus written into the law respecting murder remains to the present time.

Under Section 1111, Title 18, U. S. Code, the United States, for its territories and possessions, says that death is the penalty for murder in the first degree unless the jury recommends mercy.

It is difficult to believe that the framers of the Constitution of the United States considered death as a punishment for murder to be cruel and unusual punishment when so many offenses in their day were punishable with a death penalty.

It is not the province of the courts to adopt policy for the people of this country, or to decree social legislation; that obligation rests with the legislative branch of the government. Until very recent times, such has been the accepted norm in our country.

In 1961, a conviction for rape, with a death penalty, was imposed in Alabama on Frank Lee Rudolph. The judgment of conviction was sustained in *Rudolph* v. *Alabama*, 275 Ala. 115, 152 So. 2d 662. Thereafter, a motion for certiorari was filed with the Supreme Court of the United States, wherein the question was whether the Eighth and Fourteenth Amendments to the United States Constitution permit the imposition of the death penalty. This motion was denied, with three justices dissenting. *Rudolph* v. *Alabama*, 375 U. S. 889.

We, therefore, determine that no evidentiary hearing, based on the allegations of the post-conviction petition herein, is required or is proper. The judgment of the trial court is affirmed.

*Judgment affirmed.*

BRENNEMAN, P. J., and DOYLE, J., concur.

BRENNEMAN, P. J., HUNSICKER and DOYLE, JJ., of the Ninth Appellate District, sitting by designation in the Sixth Appellate District.