THE STATE OF OHIO, APPELLEE, *v.* FAIRBANKS, APPELLANT.

[Cite as State v. Fairbanks (1971), 33 Ohio App. 2d 39.]

(No. 11507—Decided November 29, 1971.)

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, and *Mr. Leonard Kirschner,* for appellee.

*Mr. Harry H. McIlwain* and *Mr. Harvey B. Woods,* for appellant.

HUNSICKER, P. J. An appeal from a judgment of guilty of first degree murder, without a recommendation of mercy, entered by the Court of Common Pleas of Hamilton County, Ohio, has been lodged in this court for review.

The court appointed counsel for the defendant, appellant herein, say that the trial court erred:

"1. By entrusting the jury with the absolute power to determine whether petitioner should live or die if he were found guilty of the offense charged, and by offering no reasonable guide-lines to the jury relevant to the exercise of discretion vested in the jury, the trial court denied petitioner a fair trial in violation of the due process clause of the Fourteenth Amendment to the United States Constitution.

"2. By striking from the jury panel all veniremen who expressed conscientious objection to the imposition of the death penalty even though they said they would follow the law given them by the court. The trial court denied peti-

tioner the right to be tried by a fair and impartial jury in violation of the due process clause of the Fourteenth Amendment to the United States Constitution.

"3. In overruling defendant's motion to suppress the evidence based on an illegal arrest.

"4. By sentencing the defendant to death pursuant to a jury verdict which, under Ohio law, carries a mandatory death penalty. The trial court violated rights guaranteed by the cruel and unusual punishment clause of the Eighth Amendment and by the due process clause of the Fourteenth Amendment to the United States Constitution.

"5. In overruling defendant's motion to dismiss the indictment, as the warrant of arrest herein was issued by the Clerk of Courts, not a judicial officer, in violation of the Fourth Amendment to the United States Constitution, which guarantees that warrant shall not issue except on probable cause.

"6. In overruling defendant's motion to dismiss the indictment, based on failure of the state to try the defendant within two terms of his indictment.

"7. In overruling defendant's motion for a change of venue or continuance due to the great amount of publicity concerning his arrest, and violated his rights under the 14th, 5th, and 6th Amendments to the United States Constitution.

"8. In refusing to give the requested instructions on circumstantial evidence.

"9. In overruling defendant's motion to dismiss for lack of proof of a robbery or attempted robbery."

On February 16, 1970, at about 8 a. m., one Jerry Carpenter was shot and killed with a .22 caliber revolver. The previous night, a man named Johnson was shot while being robbed, but he was not killed. The weapon used was a .22 caliber revolver. Carpenter had no money in his pocket when his body was found. After the shooting, the robber also stole Carpenter's automobile.

The defendant, Otis Fairbanks, a twenty year old male, was arrested near his home at about 7 p. m., on February 25, 1970. The officers did not have a warrant for his arrest,

but did, soon thereafter, secure a warrant from the clerk of the Municipal Court of Hamilton County. Fairbanks resisted arrest and tried to avoid the detectives who were waiting near his home. In running away from the officers, he threw away a .22 caliber revolver, and a knife.

Johnson, the man who was shot while being robbed, had, previous to the arrest of Fairbanks, selected a picture of Fairbanks as that of a likely suspect.

An investigation of the Carpenter homicide disclosed that bullets from the gun which Fairbanks threw away had been used to shoot Johnson, Carpenter, and another person. Further investigation showed that Fairbanks had secured, through a friend, a .22 caliber gun which was used in the fatal shooting of Carpenter, and that it was the same gun that Fairbanks threw away while trying to avoid arrest outside of his home.

An indictment was returned by the grand jury on March 13, 1970, but this case was not called for trial until October 15, 1970.

A motion based on a claimed illegal arrest was filed to suppress the evidence and to discharge the defendant, and a motion was filed for a change of venue. Both motions were overruled. Such action is listed as errors 3 and 7 respectively.

There is no merit to the claim of illegal arrest. A felony had been committed, and all signs led to one person, to wit: Otis Fairbanks. Under R. C. 2935.04, any person may arrest where there is reasonable ground to believe that the person arrested committed the felony. Here, Fairbanks discarded a gun that he was carrying, which may in itself be considered a felony.

We find no merit in assignment of error number 5.

R. C. 2935.09 and 2935.10 provide for the filing of an affidavit and the issuing of a warrant for the arrest of the person charged in the affidavit. The clerk of the Municipal Court, which is a court of record, as provided by R. C. 2305.09, issued the warrant. See R. C. 1901.02. Issuing a warrant is a ministerial act.

As to the refusal to change venue, there was not a

scintilla of evidence to indicate a community feeling against Fairbanks that would justify a change of venue. Without evidence to substantiate such a claim, there is no merit to such an assertion. None of the jurors chosen, and nearly all who were interrogated, disclaimed knowledge of the newspaper and radio comments of the affair. R. C. 2931.29 was not complied with.

At the commencement of the trial, Otis Fairbanks, who said that he had been in the Ohio State Penitentiary immediately before the trial, claimed that the trial counsel were not his lawyers. These lawyers were properly so designated by the Court of Common Pleas because Fairbanks was indigent. At another point in the trial, Fairbanks wanted a continuance because, as he said, "his lawyers were not there." A part of his complaint seems to be that his lawyers did not go to the Ohio State Penitentiary at Columbus, Ohio, to see him. Fairbanks was, at all times, represented by competent, able counsel. He had refused, after the "Miranda warning," to talk to the officers, and an attorney, Eugene Smith, and present trial counsel were present at all necessary proceedings to protect his rights.

Assignment of error number 6 complains about the failure to try the defendant within the time set out in the statute. The indictment was returned on March 13, 1970. The defendant was tried October 15, 1970. During much of the time between these dates, Fairbanks was being tried on other offenses committed prior to this homicide; to wit, the shooting of Johnson, for which offense he was found guilty and sentenced to prison. The statutes of Ohio, R. C. 2945.71 *et seq.*, concerning acquittal without trial, fully cover the situation herein. The case of *State* v. *Gray,* 1 Ohio State 2d 21, does not apply in the instant case. We reject assignment of error number 6.

Assignment of error number 2 asserts that many veniremen were stricken from the panel for cause, because they said that they did not believe in capital punishment. We have read the record very carefully and do not find the claim valid. Seven jurors of the regular panel were ex-

cused for cause; three of the excusals were concurred in by counsel for the defendant; three jurors said unequivocally that they would not vote for the death penalty in any case. The seventh, and she was the first juror excused, displayed a "wishy-washy," uncertain manner in her replies to interrogation. This juror agreed with the last person who talked to her, and displayed such a lack of intelligence that she should have been removed for that reason, if not for the valid one of not accepting the death penalty in any event, regardless of the evidence.

Two jurors called as alternates were excused for cause, but no alternate was required to vote, so the claim as to them is not tenable We find no error in assignment number 2. The state of Ohio complied with the terms laid down in *Witherspoon* v. *Illinois*, 391 U. S. 510; *Boulden* v. *Holman*, 394 U. S. 478; *Maxwell* v. *Bishop*, 398 U. S. 262. See, also, *State* v. *McClellan*, 12 Ohio App. 2d 204.

Assignment of error number 9 states that the trial court should have dismissed the action for the lack of proof of a robbery or an attempted robbery.

Jerry Carpenter left home with five dollars in his pocket with which to pay a portion of his telephone bill. He was driving his automobile to a place where Fairbanks knew that he parked it. The person who shot Carpenter left in the Carpenter automobile, and when Carpenter was found a few minutes after the shooting, he did not have the money, and his auto was gone. The only logical explanation is that Fairbanks got the money before or after the shooting. In any event, the automobile was taken and, whether it is money or personal property in the form of a motor vehicle, there has been a stealing from another of something of value, by force or violence. The robbery was effectively established; hence, we reject assignment of error number 9.

The evidence adduced in this case was both direct and circumstantial. The trial court gave instructions to the jury covering both forms of evidence. It is now claimed, in assignment of error number 8, that the instruction on circumstantial evidence was erroneous, and that the trial

court should have given such instruction in the terms submitted by counsel for Fairbanks.

A reading of the instruction shows that twice the trial judge read the instruction to the jury on both forms of evidence. The instruction on circumstantial evidence, while not as complete or as detailed as some judges make it, contained all of the essentials of that form of evidence. The means by which truth is determined is by evidence, and the general rules of evidence are the same for civil and criminal cases. *State* v. *Nevius*, 147 Ohio St. 263; R. C. 2945.41. The instruction on circumstantial evidence being complete, we are compelled to reject assignment of error number 8.

We pass now to a consideration of assignments of error number 1 and number 4, which have, in some measure, a similarity.

The state of Ohio, contra to some states, permits a jury in a first degree murder case to determine guilt and to fix the penalty, life or death This has been declared to be constitutionally impermissible. *Crampton* v. *Ohio*, 402 U. S. 183; *Andres* v. *United States*, 333 U. S. 740.

We do not think it necessary to set out the instruction concerning the granting of mercy. That instruction, as read by this court, fully explains that the matter of mercy is solely within the discretion of the jury, who have the power to grant or to withhold mercy as they desire.

The instruction as given was complete when the trial court left the matter in the sole discretion of the jury. It was not necessary to tell the jury, when considering mercy, not to be motivated by sympathy or prejudice. We do not believe that such comment was prejudicial. The exercise of **their sole discretion** permits the jury to grant mercy for any reason whatsoever, including sympathy or prejudice.

We realize that many states have abolished the death penalty, but so long as it is a punishment provided by the law of the state of Ohio, this, and other Ohio courts, are bound by oath to follow that law. The personal feelings of any number of this or any other court cannot be considered in this situation.

We reject assignment of error number 1.

We have been informed in many ways that there is pending in the Supreme Court of the United States several cases, among them an Ohio case, in which the problem raised by assignment of error number 4 will be determined. Until those cases are finally determined, we must abide by the law of Ohio.

The writer of this opinion had a question, similar to that raised by assignment of error number 4, before him in *State* v. *McClellan, supra,* wherein at pages 207, 208, the court said:

"All law students in the beginning of their study of the law relating to crimes learn of the many offenses that were punished by death under early Anglo-Saxon jurisprudence. In the colonies and, especially, after independence, few offenses were punishable by death; treason, murder, rape, and arson were, usually, the only offenses where the extreme penalty was permissible. In England, at the beginning of the 19th century, over two hundred offenses were capital crimes. See: A Century of Law Reform, Chapter II, written by Sir Harry B. Poland, and printed by The McMillan Co., 1901.

"On September 6, 1788, the Northwest Territory, at its first organizational meeting, enacted a law defining murder, which said:

" 'If any person or persons shall with malice aforethought, kill or slay another person, he, she, or they so offending, shall be deemed guilty of murder, and upon conviction thereof shall suffer the pains of death.' I Laws of the Northwest Territory, Chapter VI, page 13.

"Thereafter, at the first session of the Third General Assembly of the state of Ohio, 3 Ohio Laws, Chapter 1, Section 2, there was enacted a similar law defining murder.

"The crime of murder has at all times in this state been punishable by death; however, a provision that a recommendation of mercy would prevent the death penalty being imposed was first enacted by the Ohio Legislature on April 23, 1898. The provision thus written into the law respecting murder remains to the present time.

"Under Section 1111, Title 18, U. S. Code, the United States, for its territories and possessions, says that death is the penalty for murder in the first degree unless the jury recommends mercy.

"It is difficult to believe that the framers of the Constitution of the United States considered death as a punishment for murder to be cruel and unusual punishment when so many offenses in their day were punishable with a death penalty.

"It is not the province of the courts to adopt policy for the people of this country, or to decree social legislation; that obligation rests with the legislative branch of the government. Until very recent times, such has been the accepted norm in our country."

We reject assignment of error number 4.

It is the conclusion of the court, after an examination of all of the claims of error, that no error prejudicial to the substantial rights of the defendant, Otis Fairbanks, occurred herein. The judgment must be affirmed.

*Judgment affirmed.*

Jones and Cook, JJ., concur.

Hunsicker, P. J. (Retired, of the Ninth Appellate District, assigned to active duty under authority of Section 6 (C), Article IV, Constitution), Jones and Cook, JJ., of the Eleventh Appellate District, sitting by designation in the First Appellate District.