540 P.2d 850

STATE of New Mexico, Plaintiff-Appellee,

v.

Michael J. ORTIZ, Defendant-Appellant.

No. 1751.

Court of Appeals of New Mexico.

Sept. 10, 1975.

Chester H. Walter, Jr., Chief Public Defender, Bruce L. Herr, Appellate Defender, Sarah M. Singleton, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Jay F. Rosenthal, Charles Roybal, Mark G. Shoesmith, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

LOPEZ, Judge.

The defendant was indicted by the grand jury of Bernalillo County for the murder of Arthur Duran by means of a firearm, contrary to §§ 40A–2–1, 40A–2–3, 40A–29–

3.1, N.M.S.A.1953 (2d Repl.Vol. 6) and for the aggravated battery of Tim Abeyta by means of a firearm, contrary to §§ 40A–3–5 and 40A–29–3.1, N.M.S.A.1953 (2d Repl.Vol. 6). Following a jury trial the defendant was found guilty of voluntary manslaughter and aggravated battery; both offenses were found to have been committed with a firearm. After judgment and sentence were imposed, the defendant appealed. We affirm.

The defendant presents five points for reversal: (1) admission of polygraph evidence; (2) exclusion of jurors who would not return a guilty verdict for first degree murder; (3) restriction of the defendant's cross-examination of a juvenile witness; (4) admission of evidence of a prior crime of defendant; (5) admission of the testimony of a witness who was present in the courtroom in violation of the exclusionary rule.

On the evening of March 4, 1974, Penny Marie Apodaca, 17 years of age, and Lisa Reese, a 14 year old runaway from Oregon, were driving around with the defendant, Michael Ortiz, who was at that time 20 years old. They stopped in front of the Alibi Inn on Fourth Street in Albuquerque. The accounts of what followed differ. The testimony of the two women was that the defendant got out of the car and approached two men, Abeyta and Duran, who were standing outside the Inn. The defendant asked the two men for money. One of the men, Abeyta, had a gun which the defendant asked him to put away. Abeyta gave the gun to the defendant and the defendant proceeded to shoot Abeyta and Duran. The defendant and the women then drove back to the motel where the defendant was living. The police arrived after several hours. The theory advanced by the defense at trial was that the defendant had remained in the car and one of the women had shot the victims.

### (1) *Polygraph Evidence*

The defendant's first point is a challenge to the trial judge's order admitting evidence of the results of a polygraph test taken on a rebuttal witness of the defendant. On its face the defendant's challenge is curious because the defendant stipulated to the qualifications of the examiner and did not object to the introduction of the evidence. The defendant's claim on appeal is that the trial judge nonetheless erred in admitting the results because there was insufficient evidence that the examiners were qualified and the tests were reliable. The defendant bases this challenge on dicta in the Supreme Court's opinion in *State v. Lucero*, 86 N.M. 686, 526 P.2d 1091 (1974), where it was said that polygraph results were admissible only when: (1) the tests were stipulated to by both parties, (2) no objections were made, and (3) the entire procedure satisfied general criteria of reliability. In *State v. Dorsey*, 88 N.M. 184, 539 P.2d 204 (1975), decided after oral argument in this case, the Supreme Court was faced with a case where the reliability of the test was not contested, yet there was objection to its introduction. The situation in *Dorsey* was the converse of the situation before us. The Supreme Court's opinion is instructive, however, for in reversing their prior stance in *Lucero* the court indicated that henceforth the admissibility of polygraph evidence would be governed by the New Mexico Rules of Evidence. Therefore, we have no reason to suppose that parties who wish to appeal the admissibility of polygraph evidence are excused from challenging its admission at trial. Rule 103 of the Rules of Evidence (§ 20–4–103, N.M.S.A.1953 (Repl.Vol. 4, Supp.1973)).

### (2) *Exclusion of Jurors*

The defendant's second point of error is that the trial judge erred in allowing the prosecutor to voir dire the prospective jurors on their feelings regarding capital punishment and in excusing for cause those jurors who were opposed to capital punishment.

The defendant was indicted, and presumably tried, on the charge of first degree murder, which carries a mandatory death sentence. Section 40A–29–2, N.M.S.A.1953

(2d Repl.Vol. 6, Supp.1973). All those jurors who were excused for cause stated during voir dire examination that they could not return a verdict of guilty of first degree murder, regardless of what the facts showed. The defendant contests the exclusion of these jurors on two grounds. The first is that exclusion of the jurors who were opposed to the death penalty deprived the defendant of his right to a trial by a cross-section of the community. The second is that exclusion of these jurors resulted in a jury which was composed of persons who tended to favor the prosecution.

The argument that the defendant was denied his right to a trial by a cross-section of the community by the exclusion of these jurors is based on the reasoning that those excluded form an identifiable and distinct class, and, therefore, cannot be excluded except where there are compelling grounds of state interest. See e. g., *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *Hernandez v. Texas,* 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954).

The difficulty with this argument is voiced in *Taylor v. Louisiana,* supra at 702:

"It should also be emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition, * * * but the jury wheels, pools of names, panels or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." [Citations omitted]

This same cross-section argument with respect to the elimination of jurors who opposed capital punishment was raised and rejected in *Turberville v. United States,* 112 U.S.App.D.C. 400, 303 F.2d 411, 419 (1962), where the court said:

"The point at which an accused is entitled to a fair cross-section of the community is when the names are put in the box from which the panels are drawn. * * * The rights of an accused in respect to the panel and final jury are (1) that there be no systematic, intentional exclusion of any section of the community and (2) that there be left as fitted for service no biased or prejudiced person."

The defendant's cross-section argument is addressed to the stage at which the final jury is chosen, not the stage at which the panel is chosen, and therefore must fail.

■ The second prong of the defendant's argument is that those jurors left for jury service after the scrupled jurors are excused, are prejudiced in the sense that they are more likely to favor the prosecution than those who are excused. Support for this general proposition is found in several recent studies, which are discussed in White, The Constitutional Invalidity of Convictions Imposed by Death-Qualified Juries, 58 Cornell L.Rev. 1176 (1973).

On the other hand, if jurors who stated they could not return a verdict which carried a mandatory death penalty were allowed to remain on the jury, this would appear to constitute a denial of the state's right to eliminate a juror who has prejudices " * * * which prevent him from standing indifferent between the government and the accused, and from trying the case according to the law and the evidence * * *." *Logan v. United States,* 144 U.S. 263, 298, 12 S.Ct. 617, 628, 36 L.Ed. 429 (1891). See also *Swain v. Alabama,* 380 U.S. 202, 219–20, 85 S.Ct. 824, 13 L.Ed.2d 759 (1964); *Hayes v. Missouri,* 120 U.S. 68, 7 S.Ct. 350, 30 L.Ed. 578 (1887); *State v. Pace,* 80 N.M. 364, 456 P.2d 197 (1969).

The issue generated by this conflict is " * * * whether the State's interest in submitting the penalty issue to a jury capable of imposing a capital punishment may be vindicated at the expense of the defendant's

interest in a completely fair determination of guilt or innocence * * *." *Witherspoon v. Illinois*, 391 U.S. 510, 520 n. 18, 88 S.Ct. 1770, 1776, 20 L.Ed.2d 776, 784 (1968).

In the case before us, unlike the case in *Witherspoon*, there is no option of using a bifurcated trial as a device to be fair to both sides. See White, The Constitutional Invalidity of Convictions Imposed by Death-Qualified Juries, supra at 1217 n. 218.

Before we would want to attempt to resolve the very difficult questions raised by this clash of rights, we would want more information and analysis than is available to us now. Thus, surveys that have been made concerning those who "oppose" and "favor" death penalty must be evaluated to determine whether they are applicable to jurors qualified under a post-Witherspoon standard; that is those jurors who state that there are some conceivable circumstances under which they could return a verdict of guilty of first degree murder. Another area of interest is whether there are any means of excusing jurors who "favor" the prosecution, as shown by their responses about the death penalty, so as to arrive at a jury which is neutral with regard to guilt. Other gaps in the state of current knowledge about the public's attitude towards the death penalty are indicated in Vidmar and Ellsworth, Public Opinion and the Death Penalty, 26 Stan.L.Rev. 1245 (1974).

Given the extreme importance and complexity of the issue involved, we are unable to agree with the defendant that the data is no longer in the "tentative and fragmentary" condition in which the Supreme Court found it in *Witherspoon*. Therefore, neither on the basis of the studies cited to us by the defendant nor on the basis of judicial notice can we conclude that the defendant was denied a jury that was impartial on the issue of guilt or innocence.

▇▇▇ The defendant argues that it was improper to voir dire potential jurors on this issue because they do not have, under the present statute, any discretion in imposing the death penalty. We are cited no cases supporting the proposition that jurors cannot be questioned as to whether they will follow the law of the case and would merely observe that the right to an impartial jury " * * * carries with it the concomitant right to take reasonable steps to insure that the jury is impartial." *Ham v. South Carolina*, 409 U.S. 524, 532, 93 S.Ct. 848, 853, 35 L.Ed.2d 46 (1972) (separate opinion of Mr. Justice Marshall, dissenting in part and concurring in part). One of the most important methods of securing this right is the right to challenge, yet " * * * the right to challenge has little meaning if it is unaccompanied by the right to ask relevant questions on voir dire upon which the challenge for cause can be predicated."

Finally, we are not insensitive to the danger that the state will improperly charge defendants with crimes carrying a mandatory death penalty, so as to take advantage of the greater challenges for cause thereby allowed. This issue was not briefed in this case and we will wait until a more appropriate case is presented to confront it.

### (3) *Cross-examination of a Juvenile*

▇▇▇ The third point raised by the defendant is that his right of cross-examination was unconstitutionally restricted. The issue arose during the cross-examination of Ms. Reese, who was, as the defendant argues, a crucial witness for the state. The defendant contends that his questioning as to certain tatoos the witness had and the details surrounding the witness' incarceration in a juvenile home should have been allowed. We are unable to reach the merits of either of these arguments because of the defendant's failure to preserve his claimed errors.

The defendant challenges the refusal of the trial judge to allow an answer to the question, "Lisa, I notice that you have got a number of tatoos on your arm. Would you tell us about those?"

In his brief the defendant argues that the tatoos which the witness bore were self-inflicted, and therefore were evidence of conduct relevant to an assessment of the witness' credibility. Rule 608 of the Rules of Evidence (§ 20–4–608, N.M.S.A.1953 (Repl.Vol. 4, Supp.1973)). Whatever the merits of this argument there is no indication in the record that the trial judge was ever informed that the defendant believed the tatoos were self-inflicted, nor was there any proffer to that effect. We cannot hold it was error for the trial judge to sustain an objection to the question given his knowledge of the purpose of asking it. Rule 103 of the Rules of Evidence (§ 20–4–103, N.M.S.A.1953 (Repl.Vol. 4, Supp. 1973)).

■ The issue of the exclusion of Ms. Reese's juvenile record is a more complicated one. Ms. Reese, at the time of the murder, was a runaway from Hillcrest, a juvenile institution in Oregon. The defendant attempted at trial to discuss her background:

"Q. Now, how long had you been in Hillcrest, or how long had you been there before you ran away?

"A. Altogether or just before?

"Q. Altogether.

"A. Ten months.

"Q. And you were put there because you were incorrigible, is that right?

"A. Yeah, and because I had a drug problem."

At this point the state objected to any further questioning "on this line" and the judge sustained the objection. The defendant made no proffer as to what his next questions would have been, and what he expected to show. Rule 103 of the Rules of Evidence states that error is not preserved in the case of a ruling excluding evidence unless a proffer was made or "* * * the substance of the evidence * * * was apparent from the context within which questions were asked." Because of the difficult evidentiary problems involved in this sort of questioning

we are unwilling to guess as to what questions the defendant was prevented from asking. We will explain this result by a summary of the various theories under which the evidence might have been offered.

Before we can determine if evidence of the juvenile adjudication would have been admissible under Rule 609 of the Rules of Evidence, we must know "* * * if conviction of the offense would be admissible to attack the credibility of an adult." (§ 20–4–609, N.M.S.A.1953 (Repl.Vol. 4, Supp.1973)). For evidence of the witness' bad character to have been admissible under Rule 608 of the Rules of Evidence, it would have had to have been evidence of specific conduct which was "* * * probative of truthfulness or untruthfulness and not remote in time * * *." Since we do not know of what offense the juvenile was convicted, nor what conduct the defendant intended to expose, we cannot rule on whether evidence of the conviction should have been admitted under these exceptions to the general rule of inadmissibility of character evidence. The defendant also relies on *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) as proof that their questions were wrongly excluded. The use of *Davis* compounds our problems caused by our lack of knowledge of the excluded questions. In *Davis* the juvenile's record was ordered admitted to show that the witness might have been biased because of a fear that his parole would be revoked. The Court's decision reflects a finding that the particular evidence offered had a bearing on the witness' credibility. Again, in the absence of the rejected questions we cannot speculate on how the defendant would have called into question the witness' credibility.

### (4) *Prior Crimes*

■ The defendant predicates error on the trial court's failure to exclude testimony by a witness that contained references to a prior crime of the defendant. The circumstances surrounding the contested evidence were that Ms. Apodaca, the state's first witness, was describing the ac-

tions that she, Ms. Reese, and the defendant had taken after the shooting incident upon their return to the motel. The prosecutor asked her about the defendant's laughter and she said:

> "While we were cooking he was sitting in the chair, and we were cooking and he was laughing and saying that he had gotten away with an armed robbery before, or something."

After further unrelated questioning, the subject was resumed:

> "Q. Now, after you cooked up the macaroni, what did you do? What did Mike do.
>
> "A. Then we just ate and he was telling us about the trouble he had gotten in before with armed robbery."

The defendant interjected his unsuccessful objection and then the questioning continued:

> "Q. Okay, what other things did Mike Ortiz say to you at that time while you were sitting down eating?
>
> "A. Just that he had friends and for us not to say anything, and that he had gotten away with it before."

The defendant argues that this exchange reveals evidence of a prior crime and, therefore, should have been excluded under Rule 404(b) of the Rules of Evidence (§ 20–4–404, N.M.S.A.1953 (Repl.Vol. 4, Supp.1973)). The state argues that this exchange is admissible under various exceptions to the hearsay rule.

We view this exchange as an admission by the defendant that he had just participated in an armed robbery. The defendant was not tried for armed robbery but he was tried for murder and aggravated battery under the gun enhancement statute and this admission is therefore relevant to this offense. The entire exchange could also be viewed as a statement of the defendant's then existing mental condition. (§ 20–4–803(3), N.M.S.A.1953 (Repl.Vol. 4, Supp.1973)), which is relevant to the defendant's state of mind at the time of the

shooting a short time before. *State v. Borrego*, 52 N.M. 202, 195 P.2d 622 (1948).

We do not dispute that it would have been improper for the state to have introduced separately evidence of this prior armed robbery and to that extent are in agreement with the defendant about the meaning of Rule 404(b). See *State v. Ross*, (Ct.App.) 536 P.2d 265 decided May 14, 1975.

When evidence is admissible for one purpose (to establish that the defendant had knowingly used a gun earlier in the evening) but not admissible for another purpose (to show that the defendant had committed prior crimes) how is the decision made whether to admit it or not? Rule 106 of the Rules of Evidence (§ 20–4–106, N.M.S.A.1953 (Repl.Vol. 4, Supp. 1973)) states the general rule:

> "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the judge, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

This rule does not rest upon a naive faith in curative instructions; there are many instances when the dangers of prejudice, drawn into consideration by Rule 403 might dictate the exclusion of evidence otherwise admissible under Rule 105. See, Advisory Committee Notes for Proposed Rules of Evidence for United States Courts and Magistrates; *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964). In the case before us the mention of the previous armed robbery was off-handed and casual, whereas the evidentiary value of the entire exchange was compelling. Therefore, we are not willing to conclude here that the jury would not have followed limiting instructions, if requested, so that the prejudicial effect of this evidence could have been minimized. See *Spencer v. State of Texas*, 385 U.S. 564, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

## (5) *Witness Exclusion Rule*

The defendant's fifth point of error is that the trial court erred in permitting the testimony of a rebuttal witness for the state who had been in the courtroom during the testimony of other witnesses in violation of the exclusion of witnesses rule.

█ The rule excluding witnesses takes effect upon the request of any party. Rule 615 of the Rules of Evidence (§ 20–4–615, N.M.S.A.1953 (Repl.Vol. 4, Supp.1973)). The decision as to what remedy is appropriate in the event the rule is violated is in the discretion of the trial judge, *State v. Barboa,* 84 N.M. 675, 506 P.2d 1222 (Ct. App.1973); and the controlling consideration is prejudice to the complaining party. *State v. Barboa,* supra; *State v. Romero,* 69 N.M. 187, 365 P.2d 58 (1961).

In this case we find that the trial court's discretion was properly exercised. The witness who violated the rule, Albert Cordova, testified about a heated confrontation with the defendant that had occurred at a trailer court in the evening of the shooting. One of the prosecution witnesses, Ms. Reese, testified that there had been no argument at the trailer park; the other prosecution witness, Ms. Apodaca, testified that there had. Ms. Apodaca said she hadn't witnessed the incident and gave no details of it. The defendant denied that there had been any argument at the trailer court. Mr. Cordova was present during the two womens' testimony; he was not present during the defendant's testimony.

█ The purpose of the rule excluding witnesses is to give the adverse party an opportunity " * * * to expose inconsistencies in their testimony." 3 Weinstein's Evidence ¶ 615[01] & n. 1 (1975); and " * * * to prevent the possibility of one witness shaping his testimony to match that given by other witnesses at the trial * * *." *United States v. Leggett,* 326 F.2d 613 (4th Cir. 1964), cert. denied, 377 U.S. 955, 84 S.Ct. 1633, 12 L.Ed.2d 499 (1964).

█ In this case Mr. Cordova would have had to chose whether to make his testimony conform to that of Ms. Reese or to that of Ms. Apodaca; since he did not hear the defendant's testimony, he would have been unaware of which version would have exposed the defendant's testimony as inaccurate. There was no danger of Mr. Cordova adopting his elaborate story of the trailer court episode from Ms. Apodaca, since she related no details at all about it. Therefore, because in this particular situation the reasons for the exclusionary rule were not involved, it was not an abuse of the trial judge's discretion to allow the witness to testify.

█ Finally, the defendant is concerned with the suggestion made in *State v. Barboa,* supra, that it would be advisable for the trial judge to determine whether the counsel condoned the witness' violation of the rule. That this suggestion was substantially complied with is evinced by the trial judge's questioning of the prosecutor and the judge's subsequent statement that the prosecutor was unaware that he would be calling the witness.

The judgment and sentence are affirmed.

It is so ordered.

SUTIN, J., concurs.

WOOD, C. J., specially concurring.

WOOD, Chief Judge (specially concurring).

I concur in the result only, the extended discussion is unnecessary.

Defendant stipulated to the qualifications of the polygraph examiner and did not object to introduction of the test results. His contentions concerning the examination results are raised for the first time on appeal and should not be considered under Appellate Rule 11. See *State v. Chavez,* 82 N.M. 238, 478 P.2d 566 (Ct.App.1970).

The prospective jurors excused for cause stated they could not return a verdict of guilty of first degree murder regardless of the facts. They were properly excused.

**378**

See *State v. Pace*, 80 N.M. 364, 456 P.2d 197 (1969). At oral argument counsel conceded that the record does not show that the jurors who sat in the case were not in fact representative of a cross-section of the community. See *State v. Gonzales*, 82 N.M. 388, 482 P.2d 252 (Ct.App.1971). The argument that voir diring prospective jurors as to their beliefs concerning the death penalty deprived defendant of a representative jury has no factual support in the record.

There is no basis for the claim that cross-examination concerning a juvenile record was unduly restricted. Defendant made no tender under Rule of Evidence 103(a)(2).

The testimony of a witness that shortly after the crime defendant stated that he had gotten away with armed robbery was admissible under Rule of Evidence 803(3) because the testimony showed defendant's existing state of mind.

In permitting the witness who had remained in the courtroom to testify on rebuttal, the trial court substantially complied with the procedure suggested in *State v. Barboa*, 84 N.M. 675, 506 P.2d 1222 (Ct. App.1973).