804 P.2d 1082

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Charles REYNOLDS,
Defendant–Appellant.**

No. 11811.

Court of Appeals of New Mexico.

Nov. 15, 1990.

Cert. Denied Jan. 2, 1991.

Jacquelyn Robins, Chief Public Defender, Hugh W. Dangler, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Elizabeth Major, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HARTZ, Judge.

Defendant seeks reversal of his conviction of burglary of a pickup truck. NMSA 1978, § 30–16–3(B) (Repl.Pamp.1984). He contends that he was denied a fair trial by (1) the state's opening statement, in which (a) the prosecutor said that defendant had provided a "cock-and-bull story" and (b) the prosecutor may have referred to defendant's expected trial testimony; (2) the prosecutor's efforts to inform the jury of defendant's felony convictions that were more than ten years old; (3) a conversation outside the courtroom during trial in which a police officer, who had already testified, allegedly informed an officer who had not yet testified that defense counsel was asking about discrepancies concerning the date and location of the offense; and (4) cumulative error. He also claims that the district court erred by denying a tendered instruction on attempted burglary. We affirm.

## I. FACTS

Officer Kathleen Smith testified on direct examination as follows: Shortly before midnight on January 5, 1989, she responded to a citizen's report that someone was lying under a pickup truck by Sparks' Garage. Upon her arrival, she observed defendant under a red Ford pickup. As she approached the vehicle, defendant said, "Don't shoot, don't shoot, I'll come out." After he emerged, he explained that he was just hanging around. When she asked

him if the pickup was his, he answered that it was not, but that he had a similar one at home that was not running and he was checking this one out to see what was wrong with his. Soon thereafter Officer Fred Smith arrived. At his request, she looked under the pickup and found an open-end wrench. Because of a shift change, she then departed, leaving further investigation to her fellow officer. Two or three days later she made a verbal report of the incident to Officer Lance Smith, who was preparing a written report.

On cross-examination Officer Kathleen Smith was asked if she had told Officer Lance Smith that the incident occurred on January 9 at 1320 North Chicago. She responded that she could not say what date she had given him. Also, she did not remember providing a street number; she had not known the address of Sparks' Garage, except that it was on North Chicago. She recalled telling Officer Lance Smith that the pickup was a Ford, but she did not recall mentioning the model year. She admitted that at the preliminary hearing she had testified that the incident occurred on January 9, but she added that the date was straightened out at the hearing. She stated that both defendant and his wife had testified that the incident occurred on January 5.

Officer Fred Smith testified that after Officer Kathleen Smith departed, he was talking to defendant when he heard a "thunk" from the pickup. He looked under the pickup and found a starter on the ground. Defendant told him that there had been a couple of kids messing around the truck, but he had run them off and then checked under the truck to see if anything was missing. Officer Smith let defendant go because he could not reach Mr. Sparks. On cross-examination he was asked whether he had testified at the preliminary hearing that the incident occurred on January 9. He stated that he recalled the January 9 date being brought up, but he did not remember testifying to that date himself. He said that he recalled pulling the radio log, which showed the date as January 5. He also said that defendant and his wife had testified at the preliminary hearing

that the incident occurred on the night of January 5 and 6.

Terry Roberts testified that he owned a 1977 Ford pickup that he had taken to Sparks' Garage for a new gasket in the oil pan. He stated that no one had permission to work on the starter.

Aubrey Sparks testified that defendant called him the morning of January 6 to say that he had seen three kids under a pickup trying to take the starter off, but he had run them off and tried to put the starter back on. Sparks then checked out the pickup and saw some wrenches lying on the frame under the pickup. They were not his. The wrenches were consistent with those necessary to remove a starter. He stated that removing a starter requires removing two or three bolts and an electric wire, and takes about fifteen minutes. He acknowledged that he had incorrectly described the pickup to Officer Lance Smith as a 1968, rather than a 1977, model.

Officer Lance Smith testified that he prepared the report on the incident. Although he talked about the matter with Officer Fred Smith on January 6, he began his investigation on January 9. He spoke with Mr. Rogers, Mr. Sparks, and Officer Kathleen Smith. His information on the model year of the pickup came from Mr. Sparks. He admitted that he mistakenly put the date on which he prepared the report as the date of the offense itself. He testified that defendant and all other parties agreed at the preliminary hearing that the incident had taken place on January 5.

Defendant testified that on the evening of the incident he heard two boys under the pickup. When he asked them what they were doing, they admitted trying to steal parts. He assured them that if they had not stolen anything, he would talk to Mr. Sparks. After unsuccessfully attempting to call Mr. Sparks, he crawled under the pickup to determine if anything was missing, so that he could go to Mr. Sparks' home and tell him. At that time Officer Kathleen Smith arrived.

Defendant and his wife each admitted at trial that in 1985 they had been convicted

of burglary as co-defendants. The testimony of the other defense witnesses is not material to the appeal.

## II. FAIR TRIAL

### A. Prosecutorial Comments in Opening Statement

#### 1. "Cock-and-Bull" Story

During his opening statement the prosecutor asserted that the day after the incident defendant "called Mr. Sparks and gave him this cock-and-bull story about * * *." Defendant objected and moved for a mistrial. The district court denied the motion but gave an instruction, which was accepted by defendant. The instruction advised the jury that opening statements are not evidence and should not include argument. It also advised that statements of counsel's personal opinion are inappropriate even during argument.

■ As explained in the Committee Comment to the uniform jury instruction on opening statements for civil trials, "The purpose of the opening statement is *not* to serve as the final argument nor as a preface thereto. While latitude is allowed counsel, the exercise of the right is subject to control by the court in its discretion." SCRA 1986, 13–108 (emphasis in original). *See State v. Gilbert,* 99 N.M. 316, 319, 657 P.2d 1165, 1168 (1982). The district court properly could have found that the prosecutor's comment was too argumentative for opening statement.

■ The comment did not, however, require the declaration of a mistrial. If the trial judge believes that a prosecutor's impropriety is substantially likely to cause a miscarriage of justice, the judge should grant a defendant's motion for a mistrial. Otherwise, granting a mistrial motion is inappropriate. *See State v. Sutphin,* 107 N.M. 126, 130, 753 P.2d 1314, 1318 (1988). Because the trial judge's observations of the proceedings are such a critical factor in determining whether the fairness of the trial will be affected, appellate courts review such rulings only for abuse of discretion. *See State v. Simonson,* 100 N.M. 297, 301, 669 P.2d 1092, 1096 (1983). Discretion is not abused if the trial judge (a) rationally appraises the impact of the prosecutor's statement on the jury and (b) applies the correct legal standard in determining whether to declare a mistrial. Nothing here suggests error in either respect. A reasonable trial judge could readily find that, regardless of what evidence might later be adduced at trial, the prosecutor's statement was unlikely to impair significantly the jury's ability to view the evidence rationally.

■ Moreover, we can see in retrospect that in fact there was no substantial likelihood that the statement improperly prejudiced defendant. Although there are restrictions on the prosecutor's freedom to express an opinion to the jury, *see State v. Ferguson,* 111 N.M. 191, 803 P.2d 676 (Ct. App.1990), the prosecutor in final argument may make comments rationally founded on the evidence. For example, in *State v. Deutsch,* 103 N.M. 752, 758, 713 P.2d 1008, 1014 (Ct.App.1985), *cert. denied,* 476 U.S. 1183, 106 S.Ct. 2918, 91 L.Ed.2d 547 (1986), we found no misconduct in the prosecutor's referring to a letter of the defendant as " 'a tissue of lies.' " Here the evidence, only some of which has been summarized above, would support a characterization of defendant's statement to Mr. Sparks as a "cock-and-bull story." Given that the prosecutor's comment in his opening statement would have been acceptable in final argument, we fail to see how the comment denied defendant a fair trial, particularly in light of the district court's instruction to the jury at the time of the comment.

#### 2. Alleged Reference to Expected Testimony by Defendant

■ Also during his opening statement the prosecutor told the jury: "[Defendant] would have you believe he's in no condition to be crawling down * * *. I have a list of medical problems he's testified to before as far as two slipped disks and a ruptured hernia and different types of areas and a limited amount of exercise and activity he can * * *." Defense counsel objected and moved for a mistrial, arguing that the pros-

ecutor was commenting on what defendant might say and was compromising defendant's right to testify. The district court sustained the objection and, at the request of defendant, admonished the jury as follows:

Ladies and Gentlemen of the jury, the district attorney's last comments with regard to Mr. Reynolds' statements referred to his statements to Officer Smith and his statements at preliminary hearing and you should consider it in that fashion and not as a direct statement of anything he might say otherwise.

Defense counsel stated that the admonition was satisfactory.

Although perhaps the prosecutor's statement could have been construed as referring to what defendant was going to say at trial, the admonition eliminated any ambiguity in that respect. The district court was well within its discretion in finding that the potential for prejudice to defendant was too slight to justify a mistrial.

B. Prosecutor's Conduct With Respect to Defendant's Record as a Habitual Offender

1. Prosecutor's Use of Exhibit

■ As already noted, defendant had a prior conviction for burglary. Apparently he was sentenced for that offense as a habitual offender. Defendant complains on appeal that during trial the prosecutor improperly directed the jury's attention to Exhibit SX2, which presumably was a copy of the judgment and sentence in the prior burglary case. Yet there is nothing in the record to show that the prosecutor did anything with the document other than offer it into evidence. Matters outside the record present no issue for review. *State v. Smith*, 92 N.M. 533, 536, 591 P.2d 664, 667 (1979). Defendant also complains of the excessive number of bench conferences conducted with respect to the exhibit. We fail to see how defendant was prejudiced by the bench conferences. SCRA 1986, 11–103(C) encourages the use of such conferences to prevent inadmissible evidence from coming before the jury.

2. Question Concerning Defendant's "Habitual" Status

The following exchange occurred during cross-examination of defendant:

Q. You said that you were on parole at the time that this happened. Is that right?

A. Yes I was.

Q. What were you on parole for?

A. The burglary. I was placed on parole off the habitual which the underlying charge was burglary.

Q. What's the habitual? [Short pause.] What's that?

A. Where you've been in trouble more than once.

It is undisputed that the felony convictions preceding defendant's prior burglary conviction were more than ten years old and therefore too stale to be the proper subject of cross-examination under New Mexico's Rules of Evidence. *See* SCRA 1986, 11–609.

After the above-quoted exchange, defense counsel moved for a mistrial. The motion was denied. Defense counsel did not request the district court to instruct or admonish the jury.

Although the prosecutor's question concerning "habitual" may have been instinctive rather than calculating, the prosecutor should have restrained himself. Nevertheless, denial of defendant's motion for a mistrial was within the district court's discretion.

■ First, the problem was created by defendant's unsolicited reference to his "habitual" status. The prosecutor's question prejudiced defendant only insofar as members of the jury would not otherwise have understood what defendant had meant when he said he was "on parole off the habitual." As stated in *State v. Garcia*, 80 N.M. 466, 468, 457 P.2d 985, 987 (1969), "A party cannot complain of prejudice possibly resulting from a situation which he created by his own remarks during the course of the trial." Defendant has not cited us to any case in which an appellate court has ruled that a mistrial should have been declared because the prosecutor

asked the defendant to explain the answer to the previous question.

■ Moreover, "[t]he defendant has a duty to object at the earliest time." *State v. Fish*, 102 N.M. 775, 782, 701 P.2d 374, 381 (Ct.App.1985). The time for defendant's trial counsel to act was immediately after defendant first mentioned "habitual." At that time he could have requested a bench conference at which the court would instruct the prosecutor not to pursue defendant's answer. Having failed to undertake that course, defendant should not be entitled to claim that a mistrial was required. *Cf. State v. Espinosa*, 107 N.M. 293, 756 P.2d 573 (1988) (damaging statements could have been prevented by diligence of defense counsel).

■ In addition, the prejudice to defendant was substantially less than what ordinarily flows from improper interjection into a trial of the defendant's prior criminal record. Here the jury already knew that defendant had a fairly recent conviction of burglary, the very crime with which he was charged in this case. That fact in itself distinguishes this case from *State v. Rowell*, 77 N.M. 124, 419 P.2d 966 (1966), in which our supreme court reversed a conviction because of a question concerning the defendant's prior conviction. In *Rowell* evidence of any prior conviction would have been improper because the defendant did not take the stand.

Finally, we note that defendant's prior convictions would have been admissible under a rule of evidence promulgated by the United States Supreme Court in 1972, *Reporter's Note*, 409 U.S. 1132 (1972), and adopted by the New Mexico Supreme Court until it was revised in 1976. The rule permitted a felony conviction to be used to impeach a witness if not more than ten years had elapsed since the defendant's *most recent conviction. See* 3 J. Weinstein & M. Berger, *Weinstein's Evidence*, at 609–35 (1988); NMSA 1953, § 20–4–609 (Pocket Supp.1973). Although Congress revised the rule promulgated by the United States Supreme Court and the New Mexico Supreme Court has narrowed its prior rule, the propriety of admitting defendant's conviction is a close question, with respectable authority favoring admission. That authority cannot alter the primacy in this state of the current Rule 11–609, but it argues strongly against determining that the cross-examination here so deprived defendant of a fair trial as to require a mistrial.

## C. Alleged Violation of Rule Excluding Witnesses from Courtroom

Defendant claims that he is entitled to a new trial because of a violation by the state's witnesses of SCRA 1986, 11–615, which empowers the court to exclude witnesses from the courtroom. The rule had been invoked in this case.

Officer Kathleen Smith was the state's first witness. The second witness was Officer Frank Smith. After they had testified, defense counsel informed the district court that defendant's wife had observed Officer Kathleen Smith discussing the trial outside the courtroom with Officer Lance Smith, who had not yet testified. The district court conducted a hearing with respect to the allegation. The parties stipulated that defendant's wife would testify that she had overheard Officer Kathleen Smith, after she had testified, discussing problems relating to the date and address of the offense. Officer Smith testified that all she had said about the trial was that the date of the incident was at issue. She stated that the comment had slipped out and she then had changed the subject.

Defense counsel moved for a mistrial. When the trial judge commented that he thought the discrepancies were of limited relevancy, defense counsel stated that errors in Officer Lance Smith's report showed that the officers did not do a valid investigation and "Officer [Lance] Smith is the key to the whole thing." The judge ordered that Officer Lance Smith not be allowed to testify about the date of the incident, stating that the restriction would eliminate any prejudice that may have been caused. Later, however, the district court ruled that defense counsel had opened the door on the issue during cross-examination of Officer Lance Smith, so counsel were

permitted to pursue the matter on redirect examination and recross-examination.

■ Although Rule 11–615 does not specifically prohibit witnesses who have testified from discussing their testimony outside the courtroom with prospective witnesses, that prohibition is apparently part of the rule in New Mexico. *See State v. Simonson,* 100 N.M. at 301, 669 P.2d at 1096. *But see Kaess v. State,* 748 P.2d 698, 700 (Wyo.1987) (order excluding witnesses from courtroom does not prohibit witnesses from discussing testimony unless court so advises the witnesses); *United States v. Scharstein,* 531 F.Supp. 460 (E.D. Ky.1982) (whether to advise witness against discussion is matter within discretion of trial court). The purpose of the rule is to maintain the effectiveness of cross-examination by preventing witnesses from using knowledge of prior testimony to recast their own testimony, perhaps even with honorable motives, to conform to what other witnesses have said or to otherwise anticipate possible cross-examination. *See State v. Simonson; State v. Ortiz,* 88 N.M. 370, 377, 540 P.2d 850, 857 (Ct.App.1975).

■ When a violation of the rule occurs, the choice of remedy is within the sound discretion of the trial court. *See State v. Simonson; United States v. Buchanan,* 787 F.2d 477 (10th Cir.1986). Declaration of a mistrial is one possible remedy. Others that should be considered by the court are striking testimony, citing for contempt, instructing the jury, permitting examination of the witnesses by counsel concerning how their testimony may have been tainted, and permitting argument by counsel. *See Holder v. United States,* 150 U.S. 91, 92, 14 S.Ct. 10, 10, 37 L.Ed. 1010 (1893); *United States v. Jimenez,* 780 F.2d 975, 980–81 (11th Cir.1986); *United States v. Cox,* 752 F.2d 741, 748 (1st Cir.1985); *Schroff v. State,* 627 P.2d 653 (Alaska Ct. App.1981); *State v. Wells,* 202 Mont. 337, 347–48, 658 P.2d 381, 386–87 (1983). Generally, it is unnecessary to prohibit the tainted witness from testifying. *See Holder v. United States; United States v. Jimenez.* Courts should be particularly reluctant to exclude testimony of a witness

called on behalf of the defendant. *See United States v. Torbert,* 496 F.2d 154, 158 (9th Cir.), *cert. denied,* 419 U.S. 857, 95 S.Ct. 105, 42 L.Ed.2d 91 (1974). *But see State v. Hovey,* 106 N.M. 300, 742 P.2d 512 (1987); *Trujillo v. Territory,* 6 N.M. 589, 592, 30 P. 870, 871 (1892). It is apparently rare for a trial court to be reversed for permitting a witness to testify despite violation of the rule. *See* Note, *Enforcing a Sequestration Order to Exclude Witnesses—Barring the Witnesses from Testifying,* 11 U.Kan.L.Rev. 410, 411 (1963).

We fail to see how the remedy chosen by the district court would have redressed the violation of Rule 11–615 in this case. Given defendant's avowed purpose of establishing the incompetence or dishonesty of the police officers by pointing out discrepancies in the police report, the district court's restriction on Officer Lance Smith's testimony was more likely to hinder than to assist defendant. On the other hand, ultimately such inquiry was permitted, so no harm befell defendant on that account.

More importantly, a mistrial was not required. Several features of the case support this conclusion.

First, as indicated by the trial judge's comment questioning the relevance of the matter, the discrepancies were hardly of central importance in the case. There was absolutely no dispute concerning the actual date and location of the incident.

Second, Officer Lance Smith's involvement in the investigation was peripheral. Officers Kathleen Smith and Fred Smith were the ones with first-hand knowledge of the date and location of the offense. Defense counsel had a full opportunity to cross-examine them. Their testimony could not have been tainted by Officer Kathleen Smith's comment to Officer Lance Smith while Officer Fred Smith was testifying.

Third, Officers Kathleen Smith and Fred Smith testified that the discrepancy in the dates had already been brought out during the preliminary hearing. Officer Lance Smith testified that he was present throughout the preliminary hearing. Thus, defense counsel would not have surprised

**270**

him by cross-examining him at trial concerning the discrepancies. In any event, he acknowledged various errors in his report, including references to the date of the offense and the address of Sparks' Garage. Defendant has not explained how he would have benefited if there had been no conversation between Officers Kathleen Smith and Lance Smith.

### D. Cumulative Error

Defendant also contends that the above-mentioned errors, even if they do not individually require a new trial, cumulatively denied defendant a fair trial. *See State v. Diaz,* 100 N.M. 210, 668 P.2d 326 (Ct.App. 1983). We disagree. The evidence against defendant was compelling. The events during trial of which he complains did not deny him a fair trial.

### III. TENDERED INSTRUCTION ON ATTEMPTED BURGLARY

 The district court rejected defendant's tendered instruction on attempted burglary. In his brief defendant "concedes that if reaching up and touching a starter underneath a truck constitutes entry, the court's ruling was correct." He acknowledges that "the judge's conclusion that [defendant] had reached up inside 'the interior cavern of the motor' * * * did seem to flow irrefutably from [the evidence]."

Given defendant's concession, the district court's denial of the attempted-burglary instruction was proper. Defendant provides us with no authorities to suggest otherwise.

In establishing a burglary, "Any penetration, however slight, of the interior space is sufficient [to constitute entry]." *State v. Tixier,* 89 N.M. 297, 298, 551 P.2d 987, 988 (Ct.App.1976) (one-half inch penetration by instrument used by defendant is enough). Since there was no dispute that defendant's hand penetrated the engine compartment of the vehicle, there would have been no rational basis for the jury to find attempted burglary but not burglary itself. In that circumstance, the court should not instruct the jury on the lesser-included offense. *See State v.*

*Romero,* 94 N.M. 22, 25, 606 P.2d 1116, 1119 (Ct.App.1980). The issue in this case was defendant's intent in reaching into the engine compartment, not whether he actually did so.

### IV. CONCLUSION

For the above reasons, we affirm defendant's conviction.

IT IS SO ORDERED.

MINZNER and APODACA, JJ., concur.