659 P.2d 905

STATE of New Mexico, Plaintiff-Appellee,

v.

Paul LUJAN, Defendant-Appellant.

No. 5794.

Court of Appeals of New Mexico.

Jan. 11, 1983.

Rehearing Denied Jan. 18, 1983.

Certiorari Denied March 1, 1983.

Michael R. Gernsheimer, Santa Fe, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Elizabeth Major, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

LOPEZ, Judge.

The defendant appeals his conviction, judgment and sentence of one and one half years imprisonment for shoplifting contrary to § 30–16–20 A N.M.S.A.1978.

We affirm.

The decisive issue in this case concerns the propriety of the State's plea bargain agreement with co-defendant, Sarah Baca.

## FACTS

This case arose out of the shoplifting which took place at a Grand Central department store in Albuquerque. At trial Edward Moorehouse, the store detective at the time of the incident, testified that he observed Mr. Lujan and Ms. Baca filling a shopping cart with merchandise. Their failure to check prices and the random manner in which they selected goods aroused his suspicion. He eventually observed the two of them walk past the checkout counter and leave the store. Outside, about fifteen feet from the door, he approached them, informing them that they had taken the merchandise without paying for it. He requested that they return with him into the store. At this point, Mr. Lujan walked away. Mr. Moorehouse testified that he considered the protection of the store's merchandise to be of primary importance so he did not pursue the defendant. Instead, he returned inside with the goods and Ms. Baca. Afterwards, he walked outside and saw the defendant in a telephone booth. He again approached him and this time Mr. Lujan returned with him to the store. The shopping cart had been filled with approximately $500 worth of merchandise.

Mr. Lujan's testimony was that he was in Albuquerque having his Cadillac repaired. He worked as a miner in Grants and decided to use the opportunity of being in Albuquerque to do some shopping. He and Ms. Baca, his girlfriend, took the bus to the Grand Central store. His story essentially is that he was not present when Ms. Baca committed the shoplifting. During the course of the shopping with Ms. Baca, he left the store to make a phone call. He was checking to see if his car was ready. While on the phone, he was approached by the store detective who informed him that Ms. Baca had been detained for shoplifting. He returned to the store with the detective where he was informed that he too . was being accused of shoplifting.

The defense called Sarah Baca. Several questions were asked of her and she took the Fifth Amendment protection from self-incrimination in response to all of them. She also answered yes when asked if she intended to invoke the privilege to take the Fifth Amendment in response to further questions.

It is undisputed that immediately prior to trial, Ms. Baca and the prosecutor had entered into an agreement whereby felony charges were to be dropped in exchange for a nolo contendere plea to misdemeanor shoplifting. The State had additionally agreed to remain silent during sentencing. Judge Baiamonte, however, declined to rule on the plea until after Lujan's trial. The plea was ultimately accepted.

## PROPRIETY OF THE PLEA BARGAIN AGREEMENT

The defendant challenges his conviction and judgment on the grounds of consequences arising out of the alleged impropriety of the plea bargain agreement. His challenge is based mainly on four factors, to-wit: 1. An unlawful plea bargain agreement; 2. Misconduct of the prosecutor; 3. Misconduct of the trial judge; 4. Defendant's inability to present exculpatory evidence.

The defendant contends that one condition of the plea bargain agreement was

that if Sarah Baca testified at his trial she would invoke the Fifth Amendment privilege. Accordingly, the first item for our determination is to examine the contents of the agreement.

The terms of the plea agreement were that Baca would plead no contest to a misdemeanor shoplifting charge and the prosecution would remain silent at any sentencing proceeding. The defendant called Baca as a witness and Baca invoked her Fifth Amendment right against self-incrimination in response to questions on direct examination.

While Baca was on the witness stand, defense counsel asked her whether she had car keys in her possession on the date of her arrest; whether she removed items from Grand Central alone; whether she took the bus to Grand Central; and whether the defendant helped her remove items from Grand Central. Baca asserted the Fifth Amendment reply to these questions, and stated that she would do so in answer to all of defense counsel's questions.

After Baca had presented the terms of the plea agreement to the judge, the following exchange occurred:

THE COURT: All right. Now I'll go over this in more detail at the time of the plea. And then this would happen after the trial that we're going to have now on Mr. Paul Lujan, I take it?

MR. CASEY: I take it, your Honor, that there is an added proviso, one that requires Ms. Baca not to testify during Mr. Lujan's trial?

THE COURT: Well, I understand that she is not going to testify. Somebody told me that on pretrial, before we started this morning on the record, that she will take the Fifth Amendment if subpoenaed. Now you can subpoena her and so could the State. But I think she's going to take the Fifth Amendment; is that correct?

MR. SUFFLING: That's correct, your Honor. And I wish that Ms. Baca understands that that means that if called to testify at Paul Lujan's trial that she would take the stand and take the Fifth

Amendment and say that she does not wish to make any statement whatsoever in this case, your Honor.

THE COURT: Is that correct, Ms. Baca? Is that your intention?

DEFENDANT BACA: Yes.

THE COURT: Is that the advice of counsel, to plead the Fifth?

MR. SUFFLING: Is that my advice to you?

DEFENDANT BACA: Yes.

THE COURT: All right. Well, I would acknowledge your right to take the Fifth Amendment if you were called to testify. So that's the answer to the question that you had, Mr. Casey.

We have examined the complete record in this case including the colloquy between the court and all counsel and we conclude that the plea bargain agreement did not contain a condition that either Sarah Baca would not testify or that if she would be called as a witness that she would invoke the Fifth Amendment privilege. The only statement regarding any reference to a condition of Sarah Baca testifying is defense counsel's statement, but such statement is not supported by the record.

The record is clear that the State and Sarah Baca agreed to a plea bargain. The trial court did not rule on the agreement until after the defendant's trial. The record is also clear that the defendant did not request the court to rule on or accept Baca's plea before the defendant's trial. This sequence of events become very significant. When Sarah Baca was called as a witness she stood like any other witness. She could have availed herself of the Fifth Amendment privilege and, in fact, did so.

The Fifth Amendment provides that a person shall not be compelled to be a witness against herself or himself. In the case at bar, since the plea had not been accepted by the trial court before defendant's trial, we hold that the exercise of the Fifth Amendment privilege was properly sustained or granted to Sarah Baca. *State v. Zamora*, 84 N.M. 245, 501 P.2d 689 (Ct. App.1972).

The defendant also charges misconduct on the part of the prosecutor and the trial judge. We disagree with this contention. First of all, we do not have in the record any tender of proof of what Sarah Baca would have testified had she not invoked the Fifth Amendment privilege. The defendant did not at any time request an opportunity to make a tender of proof of the substance of Baca's proposed testimony. Without knowing what her testimony would have been, it is impossible for us to determine that Baca had no reason to invoke her Fifth Amendment privilege against self-incrimination, notwithstanding any proposed plea agreement.

One of the reasons for providing a tender of proof is to include the evidence in the record for purposes of appellate review. *State v. Davis,* 92 N.M. 563, 591 P.2d 1160 (Ct.App.1979). An appellate court cannot determine whether evidence was properly excluded at the trial level without a tender of the excluded evidence. *State v. Carrillo,* 88 N.M. 236, 539 P.2d 626 (Ct.App.1975).

The record shows that the trial court did not know what the exculpatory evidence would have been, as alleged by the defendant. We are also unaware of what that evidence would have been. We cannot speculate as to what Ms. Baca would have said. *State v. Ortiz,* 88 N.M. 370, 540 P.2d 850 (Ct.App.1975). We hold that there was no impropriety in the plea agreement between Sarah Baca and the State, that there was no prosecutorial or judicial misconduct, and that denial of an opportunity to present exculpatory evidence, as alleged by the defendant, is not supported by the record or law.

Considering all the fact and circumstance of this case and the authorities that we have reviewed, we conclude that the defendant received a fair trial in accordance with law. The judgment and sentence are affirmed.

IT IS SO ORDERED.

WALTERS, C.J., and NEAL, J., concur.