804 P.2d 1089

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Ray Anthony BACA,
Defendant–Appellant.**

No. 11514.

Court of Appeals of New Mexico.

Nov. 20, 1990.

Certiorari Denied Jan. 2, 1991.

Hal Stratton, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Ellen Bayard, Santa Fe, for defendant-appellant.

## OPINION

FRED T. HENSLEY, District Judge.

The state indicted defendant for conspiracy to commit armed robbery, armed robbery, and aggravated burglary, all with use of a firearm. After trial, a jury found him guilty of all counts. The court imposed judgment and sentence on the convictions. Defendant abandoned two issues he raised in his docketing statement by not arguing them in his briefs. *See State v. Fish*, 102 N.M. 775, 701 P.2d 374 (Ct.App.1985). He raises two issues pursuant to a timely motion to amend his docketing statement. *See State v. Rael*, 100 N.M. 193, 668 P.2d 309 (Ct.App.1983).

We discuss six issues on appeal: (1) the propriety of defendant's motion to amend his docketing statement; (2) the trial court's refusal to excuse a particular juror for cause; (3) the state's comment at trial on defendant's silence when asked to identify himself upon arrest; (4) the sufficiency of evidence to support defendant's conviction for aggravated burglary; (5) the trial court's refusal to exclude evidence of unindicted crimes and a high speed chase; and (6) the trial court's refusal to exclude evidence of a co-defendant's arrest. We allow the motion to amend defendant's docketing statement and affirm on all issues.

## FACTS

Defendant and another co-defendant (his father), arrived at the victim's apartment in the early hours of the morning after Thanksgiving. Defendant and his father knocked loudly on the door. One of the victims answered the door and testified that the defendant and his father, who were both armed, forced their way into the apartment. The victim screamed and another victim came out of a bedroom where he was sleeping. When the first victim screamed, defendant's father struck her with a firearm.

Once defendant and his father gained entry, they stated that they were looking for a particular third party, and inquired whether he was present. The victims insisted that the third party did not live there. One of the victims testified that "they," defendant and his father asked for money. The second victim produced some cash from his wallet and defendant's father took it. When defendant's father asked for money, defendant was standing next to one of the victims with a gun pointed at the male victim. As defendant and his father were leaving, defendant suggested that they take the victims' television set. Co-defendant disagreed and said they should depart immediately and defendant concurred.

## DISCUSSION

1. *Defendant's Motion to Amend the Docketing Statement*

Defendant moved to amend his docketing statement to include issues (3) and (4) described above. When this case was originally calendared, this court directed that the state address the merits of

defendant's motion to amend the docketing statement. The state did not do so and thereby waived any specific objections it may have had to the motion to amend. We therefore rely only on defendant's motion together with his points and authorities to determine whether it complied with *Rael.*

We note that defendant adequately explained how he preserved error or why he did not need to do so on the issues he seeks to add. In *State v. Moore,* 109 N.M. 119, 782 P.2d 91 (Ct.App.1989), we outlined what it was we sought in the *Rael* requirement that the movant state why the issues sought to be added were not included in the original docketing statement. We suggested that a clerical error might be an appropriate reason for allowing amendment. Here, defendant argues that his trial counsel, a sole practitioner, was representing another defendant charged with a capital offense during the time that he prepared and filed the docketing statement in the instant case. Defendant also asserts that his trial counsel basically copied the docketing statement filed in the appeal pursued separately by defendant's father. Trial counsel candidly admits that he simply overlooked the issues which appellate counsel moved us to consider. We believe these to be reasons justifying amendment to the docketing statement. We conclude that defendant has established ample grounds for amending his docketing statement. In addition, the discussion of the issues defendant seeks to add will amply demonstrate their viability.

To deny defendant review of the viable issues he raises would defeat the holding in *Rael* by again resorting to the mechanistic formulas that *Rael* tried to obviate, in determining when amending a docketing statement will be allowed. *State v. Moore,* 109 N.M. 119, 782 P.2d 91, 100 (Ct.App. 1989) ("the more substantive provisions make the time limitation set forth in [*State v.*] *Jacobs* [91 N.M. 445, 575 P.2d 954 (Ct. App.1978)] appear technical and mechanistic."). Defendant's attorney's attention to the capital case is a legitimate consideration within our discretion and, together with other considerations, overcomes our policy of preventing the raising of issues

by the appellate attorney after picking through the transcript for possible error. *Id.* We therefore allow the motion.

## 2. *The Trial Court's Failure to Excuse Juror for Cause*

During the trial court's voir dire, one prospective juror, Eloise K., stated she was the victim of a robbery some twenty years ago. She stated she was inclined to sympathize with the state. However, during voir dire by the state and co-defendants, the juror stated she had thought the matter over and concluded she "felt confident" she could make a decision based on the evidence heard in court. Both co-defendants moved to excuse this juror for cause but the trial court denied the motion.

Another juror, John K., stated he was the victim of two armed holdups and was not entirely satisfied with the way law enforcement officials handled the matters. This was because he pointed one perpetrator out to a police officer without results and in part because the second perpetrator was posing as a police officer. Another juror, Sandra G., stated her daughter was the victim of a forcible rape. She knew who the perpetrator was but, because the victim had bathed after the attack, law enforcement officials did not pursue the matter. These two jurors affirmed repeatedly that they would not likely be prejudiced in favor of the prosecution. The trial court granted co-defendants' motions to excuse these two jurors.

Still another juror, Julie D., stated someone robbed her house while her child was there alone. The child escaped apparently without the perpetrator's knowledge, and the juror was confident the police did all they could. Another juror's (Sharon R.) spouse was a law enforcement officer killed in the line of duty nearly seventeen years in the past. By all appearances, this juror had successfully rebuilt her life. Jurors Julie D. and Sharon R. also affirmed their ability to judge this case on the facts. In contrast to jurors John K. and Sandra G., the trial court denied co-defendants' motions to excuse jurors Julie D. and Sharon R. for cause.

■ Defendant argues that the trial court should have excused juror Eloise K. for cause. Our review is limited to whether the trial court abused its discretion with respect to rulings on challenges for cause. *State v. Cutnose*, 87 N.M. 300, 532 P.2d 889 (Ct.App.1975); *State v. Valdez*, 83 N.M. 632, 495 P.2d 1079 (Ct.App.1972). The party claiming bias has the burden of proving it. *State v. Wiberg*, 107 N.M. 152, 754 P.2d 529 (Ct.App.1988). Defendant raises four points to the effect that the trial court abused its discretion.

First, defendant states that a potential juror's status or relationship may imply bias. *See Alvarez v. State*, 92 N.M. 44, 582 P.2d 816 (1978) (supreme court implicitly found bias based on jurors' prior exposure to a state's witness absent the state's showing corroboration for that witness' testimony). We agree. Juror, Eloise K.'s status as a crime victim could imply bias. However, based upon the record before us, we find no abuse of the trial court's discretion, since the juror, Eloise K.'s responses to questions on voir dire indicate she could render a fair and impartial verdict, free from any bias. *Cf. State v. Wiberg* (evidence that juror was a member of Mothers Against Drunk Drivers and had lifelong aversion to alcohol did not establish her bias in a case involving vehicular homicide while under the influence of alcohol where she stated during voir dire that she could be neutral).

Second, defendant argues that the factual analogy found in *State v. Sims*, 51 N.M. 467, 188 P.2d 177 (1947), compels us to apply that case as controlling authority to this case. The state argues that *Sims* rests on facts with marked distinctions from the facts at issue here. *Sims* involved a charge of contributing to the delinquency of a seven-year-old girl. The *Sims* juror admitted a prejudice, as juror Eloise K. did in this case. Upon further questioning, the *Sims* juror said he would decide the case according to the facts and respect the defendant's presumed innocence, just as juror Eloise K. did in this case. However, the *Sims* juror said that should the case come down to a fine point, he would be prejudiced in favor of a convic-

tion. Juror Eloise K. on the other hand, unequivocally said she had been thinking about it and would decide the case based on the facts, giving no further indication that she reserved prejudice in the case at all. We agree with the state that the result in *Sims* is inapplicable to the case before us.

■ Third, defendant argues that juror Eloise K. equivocated about her impartiality until pressured into it by being the object of the scrutiny of the open courtroom. Defendant states that the cases which have held juror equivocation not to be indicative of bias are all based on the juror's self-induced rehabilitation from prejudice. *See, e.g., State v. Pace*, 80 N.M. 364, 456 P.2d 197 (1969); *State v. Burkett*, 30 N.M. 382, 234 P. 681 (1925); *State v. Fransua*, 85 N.M. 173, 510 P.2d 106 (Ct.App.1973). In contrast, defendant argues that we have held that outside pressures may lead jurors to claim impartiality when they do not genuinely possess it, and that is what took place here. *See State v. Perea*, 95 N.M. 777, 626 P.2d 851 (Ct.App.1981). In essence, defendant argues juror Eloise K. was more like the *Perea* juror than the *Pace, Burkett*, or *Fransua* jurors.

In *Perea*, the bailiff exposed jurors to a newspaper article solicitous of convictions, the jurors heard that the bailiff was subject to judicial discipline for allowing the newspaper into the jury room, and they learned that defense counsel was elated at the prospect of acquittal based on the jury's exposure to the newspaper. *Id.* at 778–79, 626 P.2d at 852–53. In spite of assurances of jurors that introduction of the newspaper account of the trial in *Perea* did not influence their verdict, this court overturned the conviction. *Perea*, however, is distinguishable from the result in *Pace, Fransua* and *Burkett*, because, in contrast to the outside influence injected by the introduction of a newspaper into the jury room, which occurred in *Perea*, in the latter cases it was determined that the trial courts could properly find that based on the jurors' responses to further questioning, they could be impartial.

■ We agree with defendant's reading of the cases. The rule to be derived from them is that, if a juror rehabilitates his or her own bias, the trial court may properly deny challenges for cause to that juror absent undue prompting from the court or counsel. However, the circumstances of this case are more similar to *Pace, Fransua,* and *Burkett* than *Perea.* Juror Eloise K. admitted a bias but was left to think about the matter while the court and counsel examined other jurors on voir dire. When counsel turned to juror Eloise K. for further examination, the first thing she said was that she on further reflection came to the conclusion that she could set aside her bias and decide this case on its own facts. Juror Eloise K.'s introspection speaks to her quality as a juror. Thus, we cannot say, as a matter of law, that the trial court abused its discretion in retaining juror Eloise K. on the jury.

■ Fourth, in determining whether the trial court erred in refusing to grant defendant's challenge of the juror for cause, the appellate standard of review is whether the court abused its discretion. *See Carraro v. Wells Fargo Mortgage & Equity,* 106 N.M. 442, 744 P.2d 915 (Ct.App.1987). Defendant argues that because we search for an abuse of discretion we must look at the trial court's other rulings on challenges for cause to determine whether they are inconsistent. Implicitly, defendant asks us to hold that if the trial court is ruling inconsistently, it is abusing its discretion. Defendant cites no authority for this proposition. We need not consider it. *See In re Adoption of Doe,* 100 N.M. 764, 676 P.2d 1329 (1984). We note, however, two reasons for rejecting defendant's position.

Initially, the likely reason for defendant's failure to cite authority on this point is that he assumes the difficult task of demonstrating inconsistency. Each decision on a challenge for cause is rife with judgments of demeanor, credibility, and other intangible matters. *Cf. State v. Sutphin,* 107 N.M. 126, 129, 753 P.2d 1314, 1317 (1988) ("It is within the trial court's discretion as to whether a prospective juror should be excused, since it is the trial judge who can best assess a juror's state of mind."). Defendant did not point to tangible indications of inconsistency in the trial court's resolution of these judgments, so we cannot review them. Indeed, on the cold record before us we cannot determine how the judge resolved demeanor and credibility issues. Thus, we reject defendant's invitation to hold that apparent inconsistency means abuse of discretion.

In addition, the state ably points out consistency in the trial court's rulings. Jurors John K. and Sandra G. were victims of violent crimes, juror John K. twice robbed at gunpoint and juror Sandra G. the victim of sexual violence against her daughter. Both jurors John K. and Sandra G. gave some indication that they had not resolved these crimes in their own minds, implying predispositions to even the score with defendant here, an alleged perpetrator of a violent crime. The trial court excused these jurors for cause. In contrast, juror Eloise K. was the victim of a property crime which took place some twenty years before. She was not holding the same sort of grudge as jurors John K. and Sandra G. because the crime of which she was a victim was less heinous and longer ago. Nor was juror Julie D., the victim of property crimes only. Juror Sharon R., the victim of a heinous crime of violence against her spouse, had resolved the matter in her own mind and appeared not to hold a grudge.

The trial court excused those jurors who demonstrated unresolved experiences with violent crimes similar to those charged against defendant. The court retained jurors who demonstrated resolved experiences with dissimilar crimes. We see consistency in the court's rulings, not abusive or capricious inconsistency.

In sum, there is no New Mexico authority to the effect that a juror in the position of juror Eloise K. must be excused, in spite of her initial expression of bias and experience with crime. Nothing external from her own conscience unduly influenced her so that her own rehabilitation from prejudice is impeachable as a matter of law. The trial court acted consistently in retaining Eloise K. and did not abuse its discre-

tion. With respect to defendant's claim that the trial court abused its discretion in refusing to dismiss the juror Eloise K. for cause, we find this claim to be without merit.

### 3. *The State's Comment on Defendant's Refusal to Identify Himself*

■ Defendant states that at trial the prosecutor asked the arresting officer twice whether defendant identified himself. The officer's first answer was that defendant remained silent. That, argues defendant, is a fact with little probative value. *See United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). Thus, defendant continues, the state's further inquiry into the exact same matter moments later was nothing short of bad faith and grounds for mistrial. Defendant limits his objections in this issue to the arresting officer's statement that defendant said nothing when asked by the officer for identification. Defendant correctly argues that *State v. Lara,* 88 N.M. 233, 236, 539 P.2d 623, 626 (Ct.App.1975), stands for the proposition that prosecutorial inquiry on a defendant's silence generally results in "intolerable prejudicial impact requiring reversal." However, the *Lara* rule presupposes a defendant properly remains silent pursuant to the right to do so. *See generally* N.M. Const. art. II, § 15; U.S. Const. amend. V. However, defendant's silence upon arrest was not pursuant to such rights. The information sought by the arresting officer was not testimonial, but rather neutral, unprotected information.

The rule in New Mexico has consistently been that the state may require nontestimonial acts of criminal defendants which tend to identify them without offending the right to remain silent. *See State v. Hovey,* 106 N.M. 300, 742 P.2d 512 (1987) (handwriting exemplar); *State v. Jamerson,* 85 N.M. 799, 518 P.2d 779 (Ct.App.1974) (fingerprinting defendant); *State v. Mordecai,* 83 N.M. 208, 490 P.2d 466 (Ct.App.1971) (photograph of defendant). Federal circuit courts of appeals are in accord. *See, e.g., United States v. Lamb,* 575 F.2d 1310 (10th Cir.), *cert. denied, Clary v. United States,* 439 U.S. 854, 99 S.Ct. 165, 58 L.Ed.2d 160 (1978). The rationale of these cases is that such identifying acts are not testimonial. So too is the rationale of *California v. Byers,* 402 U.S. 424, 432, 91 S.Ct. 1535, 1540, 29 L.Ed.2d 9 (1971), holding that a California statutory requirement that a vehicle operator stop and give identification after an accident did not unconstitutionally infringe on the operator's right to remain silent. We are therefore persuaded that the plurality opinion in *Byers* is a correct statement of the law of the federal and state right to remain silent. In so holding, we express no opinion whether the other basis of *Byers,* that silence as to identification is not incriminating, is an accurate interpretation of New Mexico Const. art. II, § 15.

Applied to this case, the *Byers* rule means that defendant remained silent about a matter for which he had no right. Even if the meaning of defendant's silence was equivocal, it was not constitutionally protected. Therefore, the jury could assign that silence any probative weight it deserved. The trial court properly denied defendant's motion for a new trial because the basis of the motion, improper prosecutorial comment on defendant's silence, did not exist. We affirm the trial court's admission of the state's comment on defendant's silence when asked for his identification.

### 4. *Sufficiency of the Evidence for Conviction of Aggravated Burglary*

■ Defendant states that there was insufficient evidence that his intent in entering the victim's apartment was to commit larceny, an element of the state's claim of aggravated burglary. When a defendant challenges a conviction on sufficiency of evidence grounds, we view testimony and resolve inferences from the evidence in the light most favorable to the jury's verdict. *State v. Brown,* 100 N.M. 726, 676 P.2d 253 (1984). The conviction is valid even if supported by circumstantial inference alone, so long as the inference is logical and not based on surmise. *Id.* Nonetheless, defendant argues that we must still find a constitutionally compelled

quantum of evidence for each element of the crime to sustain the conviction. He cites *State v. Carter*, 93 N.M. 500, 601 P.2d 733 (Ct.App.1979), in support, but we see nothing in that opinion which modifies our standard of review in any way.

Defendant correctly argues that he and his father's incidental larceny while at the victims' apartment cannot, as a matter of law, be the intent to commit larceny referred to in the state's indictment. We agree, but intent to commit larceny is certainly a logical inference from the evidence at trial. One witness testified that both defendant and his father asked for money, implying that defendant possessed as much larcenous intent as co-defendant. Moreover, even if the jury believed another witness who said only defendant's father asked for money, the law vests responsibility for that intent on defendant as well. The trial court properly instructed the jury on the elements of defendant's vicarious responsibility. *See* SCRA 1986, 14–2822. He was there, wielding a firearm in assistance of defendant's father's larceny. There was thus substantial evidence to support his conviction as an accomplice. *See State v. Nance*, 77 N.M. 39, 419 P.2d 242 (1966), *cert. denied*, 386 U.S. 1039, 87 S.Ct. 1495, 18 L.Ed.2d 605 (1967).

Finally, defendant's suggestion (that he and co-defendant take the television) implies that they were there to take some property, at least incidentally to finding the third party. This dual purpose is sufficient to sustain a conviction of aggravated burglary. *Cf. State v. Price*, 215 Kan. 718, 529 P.2d 85 (1974) (defendant's intent to commit "felony and theft" appropriate to sustain conviction of aggravated burglary under similar statute). Because sufficient evidence supports the verdict, we affirm defendant's conviction of aggravated burglary.

5. *Testimony Regarding Defendant's Related Bad Acts and a High Speed Chase*

At trial the arresting officer testified that he observed two men on a motorcycle matching the description of one reported stolen. The officer pursued with lights and siren on, and found one man who turned out to be defendant. The motorcyclists fled by increasing the motorcycle's speed. They then crashed and, after defendant's brief attempt at flight on foot, the officer apprehended him. Defendant argues that the trial court's admission of the arresting officer's testimony was error. Defendant bases his claim of error on the proposition that evidence of an uncharged crime is inadmissible and cites *State v. Beachum*, 96 N.M. 566, 632 P.2d 1204 (Ct. App.1981).

We do not read *Beachum* as broadly as does defendant. That case considered the exceptions to the SCRA 1986, 11–404(B) prohibition against evidence of prior bad acts as proof that a defendant had a propensity to commit similar acts. The case is inapposite because it said nothing about admission of testimony about police mistakes. As the state points out, the arresting officer testified that he was wrong about the status of the motorcycle. It was not a stolen vehicle. The taint of the prior bad act, i.e., theft of a motor vehicle, was not assigned to defendant at trial. The trial court's admission of a police officer's mistake of this type could not have prejudiced defendant. Therefore, the trial court did not abuse its discretion in admitting this testimony. *See* SCRA 1986, 11–103(A); *State v. Ranne*, 80 N.M. 188, 453 P.2d 209 (Ct.App.1969); *see also State v. Garcia*, 100 N.M. 120, 666 P.2d 1267 (Ct.App.1983) (trial court's failure to allow testimony must be prejudicial for reversible error).

With respect to the evidence of defendant's flight, both parties agree that such evidence is admissible as proof of a guilty conscience. *See State v. Vallejos*, 98 N.M. 798, 800, 653 P.2d 174, 176 (Ct. App.1982). Flight is also admissible as proof of a tacit admission of guilt. *Id.* However, the parties part on whether or not a predicate to admission of flight is some proof that the fleeing person had knowledge of being pursued.

Defendant erroneously relies on *State v. Ramirez*, 98 N.M. 268, 648 P.2d 307 (1982). Its holding is that evidence of efforts to apprehend a suspect is inadmissible absent the defendant's knowledge of these efforts.

*Id.* The prosecution in this case sought admission of the defendant's efforts to flee, not the police efforts to apprehend the defendant. The state, on the other hand, correctly points out that the inference from flight is that the fleeing person knows he or she is being pursued. *State v. Trujillo,* 93 N.M. 728, 729, 605 P.2d 236, 237 (Ct. App.1979). Moreover, defendant testified that he fled on foot after the crash because he knew the officer was in chase pursuant to a warrant arising out of the incidents giving rise to the charges at issue in this case. Even if defendant's knowledge of pursuit was necessary, he supplied it by inference and direct testimony.

We hold that the admission of the arresting officer's testimony regarding his mistake about the status of the motorcycle and his description of defendant's flight was not reversible error. The testimony about the mistake did not prejudice defendant. Also, the testimony about defendant's flight was admissible both because no proof of his knowledge of pursuit was needed and, even if it was, there was proof of such knowledge anyway. We therefore affirm the trial court on this issue.

6. *Testimony About the Circumstances of Co-defendant's Arrest*

The final issue we discuss is the trial court's admission of the testimony of a co-defendant's spouse regarding that co-defendant's arrest. Specifically, the state inquired whether the spouse was present at co-defendant's arrest. After she said no, the state asked whether she knew her spouse resisted arrest by not coming out of his house for several hours. Before she could answer, defense counsel objected. Counsel for defendant limited the objection to whether the witness was competent to testify about the matter sought in the state's question. *See* SCRA 1986, 11–602. We review the trial court's ruling for reversible error only on the grounds on which defendant based his objection at trial. *State v. Casteneda,* 97 N.M. 670, 642 P.2d 1129 (Ct.App.1982). In this case, we review the court's ruling on whether the witness was competent to testify.

The state points out that the prosecutor designed the question at issue to elicit whether the witness was, in fact, competent to testify. So it had to be proper. We agree, for a foundational question such as the one at issue here of necessity explores the witness' competence. The witness had to be able to competently testify whether she had the personal knowledge to further testify in conformity with Rule 11–602. Whether the trial court agrees with the witness is another matter. We do not condone the prosecutor's leading manner with respect to the question at issue, for it provided probative information to the jury even if the witness had no knowledge of the matter. However, in the context of defendant's limited objection, we affirm the trial court's denial of defendant's objection.

CONCLUSION

Defendant raised two additional issues pursuant to *State v. Franklin,* 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer,* 103 N.M. 655, 712 P.2d 1 (Ct.App.1985). We have considered defendant's arguments on those issues, but they do not persuade us and we do not discuss them. We affirm on all issues.

IT IS SO ORDERED.

DONNELLY and APODACA, JJ., concur.