This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: December 23, 2019**

**NO. S-1-SC-37249**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**TERRY WHITE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline Flores, District Judge**

Law Works, LLC
John A. McCall
Albuquerque, NM

for Appellant

Hector H. Balderas, Attorney General
Emily C. Tyson-Jorgenson, Assistant Attorney General
Santa Fe, NM

for Appellee

## DECISION

**BACON, Justice.**

**{1}** Defendant Terry White was convicted of first-degree (willful and deliberate) murder, aggravated burglary with a deadly weapon, and tampering with evidence for the murder of his wife's ex-husband, Don Fluitt (Victim), and the subsequent destruction of blood evidence. He was sentenced to life in prison plus twelve years and appeals directly to this Court, pursuant to Rule 12-102(A)(1) NMRA.

**{2}**     Defendant appeals his convictions on four grounds: (1) whether the trial court erred when, over objection, it admitted the testimony of Officer Robert Lawrence that Defendant was attempting suicide; (2) whether sufficient evidence supports his conviction for first-degree (willful and deliberate) murder; (3) whether sufficient evidence supports his conviction for aggravated burglary with a deadly weapon; and (4) whether sufficient evidence supports his conviction for tampering with evidence.    Determining that there was no error in the admission of Officer Lawrence's testimony and sufficient evidence to support the jury's verdicts, we affirm each of Defendant's convictions.

## I.    BACKGROUND

**{3}**     On December 28, 2016, Victim and his daughter returned home from a trip to California.  That night, Victim was to return his daughter to his ex-wife for a custody exchange.  Typically, the custody exchange happened at 7:00 p.m., but this night, the exchange had been changed to around 8:00 p.m.  The murder happened sometime after Victim returned home from dropping off his daughter.

**{4}**     Victim's neighbor provided surveillance video from the night of the murder.  At 7:37 p.m., Victim is seen leaving his house.  At 7:41 p.m., a hooded individual is seen tipping over Victim's trashcan.  At 7:55 p.m., Victim is seen driving into his garage and walking out to pick up the trashcan.  Once Victim goes back into the garage, the video shows the garage door closing and going back up again, as though the sensor was activated, and then the garage closes.

**{5}**     After Defendant was arrested for the murder, he shared details with his cellmate (Informant) about what happened on the night of Victim's murder.  Informant testified about this conversation at trial.  According to Informant's testimony, Defendant told him he tipped over Victim's trashcan while Victim was away, then after Victim returned, he snuck inside the garage while Victim was fixing his trashcan.  While sneaking in, Defendant tripped the garage sensor.  Once inside, he hid in Victim's garage, waiting by the doorway to the house for Victim to come out to smoke a cigarette.  Defendant was holding a tire thumper, which was his "Plan A," and his "Plan B" was an ax hanging on the wall.  When Victim opened the door, Defendant hit Victim with the tire thumper so hard that it broke into pieces, and after that, he "started raining down on the motherfucker."  Defendant started punching Victim, while Victim attempted to block his punches.  Victim crawled under his truck to get away, but Defendant pulled him back out.  After Victim was back out, Defendant landed a punch to his chin and saw Victim go lifeless.  Once he was knocked out, Defendant grabbed Victim's trachea, twisted it, and "sucked the life out of the motherfucker."  To ensure Victim was dead, Defendant went inside, grabbed a knife, and cut Victim's throat.  Informant asked Defendant why he killed Victim, to which Defendant responded, "The motherfucker just wouldn't go away."

**{6}**     According to Informant, Defendant told him that there was an upcoming court date where his wife could lose more custody of their daughter.  Defendant and his wife decided that the custody exchange gave an opportunity for Defendant to kill Victim, so

they changed the drop-off time to give Defendant time to "do what he had to do, to go to [Victim's] house, and basically, kill him."

**{7}**     The day after the murder, Victim's body was found by his co-worker, who then called the police.  When the police arrived, they found Victim laying on his back in between an SUV and the wall in the garage.  There was blood coming out of his mouth and neck and a cut from one side of his neck to the other.  Blood was seen on the hood of the SUV, on a refrigerator, and on the wall.  No blood was found around Victim, and there were paw prints from a cat on the tile, as though someone had just mopped.  Wet towels smelling of bleach were found in the washer.  Bleach was also detected when the criminalistics detective sprayed Bluestar, which illuminates bloodstains.  Bloodstains were found in various locations of the house and the garage.

**{8}**     Along with the stab wounds, Victim had a number of abrasions and scrapes on his back.  Abrasions were also found toward Victim's ear, on his hand, and near his eye, and a laceration was found next to his eye.  He had signs of blunt force trauma caused from an object such as a fist or a bat.  Blunt force injuries were also detected in Victim's mouth.  Evidence of petechial hemorrhages, or burst capillaries, commonly associated with strangulation, were found on his eye and eyelids.

**{9}**     During the investigation, DNA from Defendant was found under Victim's left fingernail.  Based on this evidence and Defendant being only one of the few individuals having knowledge of the timing of the custody exchange, a warrant was issued for Defendant's arrest.  After the warrant was issued, Defendant was found at a truck stop in Holbrook, Arizona by Officer Robert Lawrence of the Navajo County Sheriff's Department.  Officer Lawrence's attention was drawn to Defendant's vehicle because he thought it was strange that it was parked among the semi-trucks, which tend to make a lot of noise.  When Officer Lawrence approached Defendant's vehicle, he noticed that there was a visor covering the windshield, the driver and passenger windows were covered with a towel, and the windows were rolled up.  There was a blue plastic hose running from the exhaust into the vehicle.  After seeing this, Officer Lawrence testified that he presumed someone had already committed suicide or was in the process of committing suicide.  In response, he approached the vehicle and knocked on the window.  Defendant rolled down the window and was sweating, had a red face, and had bloodshot eyes.  Officer Lawrence asked Defendant about the blue hose, to which Defendant responded that it helped him relax.

**{10}**     After identifying Defendant, Officer Lawrence learned of Defendant's arrest warrant and placed him under arrest.  Defendant was charged with an open count of murder (willful and deliberate), or in the alternative, first-degree murder (felony murder); aggravated burglary with a deadly weapon, or in the alternative, aggravated burglary while committing a battery; and tampering with evidence.  Following a jury trial, Defendant was found guilty of first-degree murder (willful and deliberate), felony murder, aggravated burglary with a deadly weapon, and tampering with evidence.  The State dismissed the charges for aggravated burglary while committing a battery, and the felony murder conviction was vacated due to double jeopardy concerns.

## II. DISCUSSION

**{11}** Defendant challenges his convictions on four grounds: (1) Officer Lawrence's testimony that Defendant was attempting suicide was erroneously admitted and an improper comment on Defendant's right to silence, and should have been excluded; (2) insufficient evidence was presented at trial to support his conviction of first-degree murder (willful and deliberate); (3) insufficient evidence was presented at trial to support his conviction of aggravated burglary with a deadly weapon; and (4) insufficient evidence was presented at trial to support his conviction of tampering with evidence. Defendant advances no meritorious argument in support of reversal or remand, and thus, we affirm all of his convictions.

### A. Officer Lawrence's Testimony That Defendant Was Committing Suicide Was Properly Admitted, Therefore, its Admission Does Not Warrant a New Trial

#### 1. The admission of Officer Lawrence's testimony was not an abuse of discretion by the trial court

**{12}** Defendant claims that the trial court abused its discretion in allowing Officer Lawrence to testify as to his conclusion that Defendant was attempting suicide. The only testimony at issue is Officer Lawrence's conclusion that Defendant was attempting suicide—not the factual observations surrounding the conclusion. He attempts to argue that a new trial is warranted because the testimony was admitted in error and such error was not harmless.

**{13}** The State responds that Officer Lawrence's comment was not mere speculation, but rather, was a reasonable inference based upon his observations. The State highlights the fact that Officer Lawrence observed a hose running from Defendant's exhaust to his vehicle and towels stuffed into his rolled up windows. Accordingly, the State argues, the trial court did not abuse its discretion in allowing the admission of Officer Lawrence's reasonable inference.

**{14}** "The admission or exclusion of evidence is reviewed for an abuse of discretion." *Ruiz v. Vigil-Giron*, 2008-NMSC-063, ¶ 7, 145 N.M. 280, 196 P.3d 1286. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

**{15}** The trial court did not abuse its discretion in admitting Officer Lawrence's testimony that Defendant was attempting suicide. At trial, defense counsel objected to this testimony as "speculative." Defense counsel only objected to Officer Lawrence's conclusion that Defendant was committing suicide, and in fact, clarified that she was not objecting to anything the officer saw or observed. When asked by the trial judge for an explanation as to how the testimony was speculative, defense counsel merely reiterated her objection without further explanation. On appeal, Defendant asks us to conclude

that the admission of the evidence was not harmless error and that the error affected the verdict.

**{16}** As the State contends, even without Officer Lawrence directly stating it, the jury could have reasonably inferred that Defendant was attempting suicide. *See State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 ("A reasonable inference is a conclusion arrived at by a process of reasoning which is a rational and logical deduction from facts admitted or established by the evidence." (internal quotation marks and citation omitted)). Defendant had a blue hose leading from his exhaust into his vehicle. All the windows of the vehicle were rolled up and covered. The windshield was covered. When Defendant opened the door, he was sweating and had bloodshot eyes. His only explanation for what he was doing was that it helped him relax. The jury could have reasonably inferred that Defendant was attempting suicide from these facts, even without Officer Lawrence explicitly stating it. As Officer Lawrence testified, his reason for approaching Defendant's vehicle was that he thought someone had already committed suicide or was in the process of committing suicide. Importantly, it is not "clearly against the logic and effect of the facts and circumstances of the case" for the trial judge to have admitted Officer Lawrence's testimony that Defendant was attempting suicide when that fact could be reasonably inferred from the testimony provided. *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted); *see also State v. Smith*, 2016-NMSC-007, ¶ 27, 367 P.3d 420 ("If there are reasons both for an against a [trial] court's decision, there is no abuse of discretion."). Witnesses are not required to suspend all common sense. Further, the fact that the testimony may have prejudiced Defendant does not render the testimony inadmissible. *See State v. Ramming*, 1987-NMCA-067, ¶ 34, 106 N.M. 42, 738 P.2d 914 (stating that exclusion of evidence is not mandated simply because it is prejudicial to a defendant).

**2.      Defendant's argument that Officer Lawrence's testimony was a comment on his silence is unpreserved, and he fails to argue fundamental error**

**{17}** Defendant argues that Officer Lawrence's testimony that he was attempting to commit suicide "implicated his fundamental right not to have the State comment on his silence." To support this argument, he cites to *State v. Gutierrez*, 2007-NMSC-033, ¶ 15, 142 N.M. 1, 162 P.3d 156, for the proposition that the mention of a defendant's refusal to take a polygraph necessarily infers guilt. Defendant equates our holding in *Gutierrez* to Officer Lawrence's comment about his attempt to commit suicide, yet he fails to coherently connect the arguments.

**{18}** However, this issue was not preserved at trial, as Defendant did not object to any constitutional implications prior to his appeal. *See Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 (holding that a party must demonstrate that a ruling of the trial court was invoked in order to preserve an issue for appeal). Not only did Defendant fail to preserve the constitutional argument at trial, on appeal, he fails to develop an argument that the trial court committed fundamental error. *See State v. Dickert*, 2012-NMCA-004, ¶ 35, 268 P.3d 515 (declining to review for fundamental error where a party failed to develop the argument).

Accordingly, we need not review for fundamental error and turn to Defendant's sufficiency of the evidence arguments.

**B.      When Viewed in the Light Most Favorable to the Verdict, Sufficient Evidence Was Presented at Trial to Support Defendant's Convictions of First-Degree Murder (Willful and Deliberate), Aggravated Burglary with a Deadly Weapon, and Tampering with Evidence**

**1.      Standard of review**

**{19}** "In challenging the sufficiency of evidence used to convict a defendant of a crime, we must determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Romero*, 2019-NMSC-007, ¶ 51, 435 P.3d 1231 (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Torres,* 2018-NMSC-013, ¶ 42, 413 P.3d 467 (internal quotation marks and citation omitted). "In determining the sufficiency of the evidence, we review the evidence in the light most favorable to the State, resolving all conflicts and making all permissible inferences in favor of the jury's verdict." *State v. Thomas*, 2016-NMSC-024, ¶ 37, 376 P.3d 184. In conducting this review, "[t]he jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted).

**2.      Sufficient evidence supports Defendant's conviction for first-degree, willful and deliberate murder**

**{20}** Defendant challenges the sufficiency of the evidence that supports his first-degree murder conviction and claims that the State had only "the slightest sliver of physical evidence to connect [him] to the homicide." To support this argument, Defendant goes into exhaustive detail about how the DNA evidence against him was unreliable, and he attacks the credibility of Informant. Defendant is essentially asking us to reweigh the evidence against him, which is not the correct standard. *See State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72 ("[An appellate] court should not re-weigh the evidence to determine if there was another hypothesis that would support innocence or replace the fact-finder's view of the evidence with the appellate court's own view of the evidence."). We do not entertain such arguments and have held that we will not intrude on the role of the factfinder. *See State v. Garcia*, 2016-NMSC-034, ¶ 24, 384 P.3d 1076 (holding that on review, we will not second-guess the jury by reweighing the evidence).

**{21}** Sufficient evidence supports Defendant's first-degree murder conviction. According to the jury instructions, in order for the jury to find Defendant guilty of first-degree murder (willful and deliberate), it was required to find that (1) Defendant killed Victim; (2) Defendant killed Victim with deliberate intent; and (3) the murder happened

in New Mexico on or between December 28 and 29, 2016.[1] *See* UJI 14-201 NMRA. Defendant does not argue whether or not the murder was premeditated; however, he does contest that he was the one who actually killed Victim.

**{22}** At trial, both direct and circumstantial evidence was presented to support Defendant's first-degree murder conviction. Although Defendant claimed to have had no contact with Victim for over a month, his DNA was found under Victim's fingernails. Defendant provided explicit detail to Informant about how he completed the murder. This detail was corroborated through investigations conducted by police. This detail was also corroborated through video evidence. Defendant and Victim had a complicated history, and there was an upcoming court date with Defendant's wife and Victim. After a warrant was issued for his arrest, Defendant attempted suicide. In considering this overwhelming evidence, a jury could have reasonably concluded that Defendant was the one who killed Victim. Giving deference to the jury's verdict, we affirm Defendant's first-degree murder conviction.

### 3. Sufficient evidence supports Defendant's conviction for aggravated burglary with a deadly weapon

**{23}** In order for the jury to find Defendant guilty of aggravated burglary with a deadly weapon, it was required to find that (1) Defendant entered Victim's house without authorization; (2) Defendant entered Victim's house with the intent to commit first-degree murder (willful and deliberate), felony murder, and/or second degree murder once inside; (3) Defendant was armed with a knife or became armed with a knife after entering; and (4) the aggravated burglary happened on or between December 28 and 29, 2016. *See* UJI 14-1632 NMRA.

**{24}** Sufficient evidence supports Defendant's aggravated burglary with a deadly weapon conviction. According to Informant's testimony, Defendant snuck into Victim's garage in order to murder him. *See State v. Lara*, 1978-NMCA-112, ¶ 6, 92 N.M. 274, 587 P.2d 52 (stating that a garage is part of one's dwelling house). Once inside, he became armed with a knife that he used to complete the murder. Victim's body was found inside his garage. According to the autopsy results, Victim's death was caused by stab wounds to the neck. Although Defendant argues that no evidence connected a specific knife to him, the jury could have inferred from the autopsy that a knife was used in the murder. *See State v. Baca*, 1990-NMCA-123, ¶ 25, 111 N.M. 270, 804 P.2d 1089 (concluding that circumstantial evidence can support a conviction, as long "as the inference is logical"). All the elements of the jury instruction for aggravated burglary were plainly met, thus, we affirm Defendant's conviction for aggravated burglary with a deadly weapon.

### 4. Sufficient evidence supports Defendant's conviction for tampering with evidence

---

[1]The date each crime occurred is uncontested.

**{25}**   In order for the jury to find Defendant guilty of tampering with evidence, it was required to find that (1) Defendant destroyed, hid, or fabricated blood and/or trace evidence; (2) in doing so, Defendant intended to prevent the apprehension, prosecution, or conviction of himself for the crime of first-degree murder (willful and deliberate) and/or felony murder and/or second degree murder; and (3) the tampering with evidence happened on or between December 28 and 29, 2016.  *See* UJI 14-2241 NMRA.

**{26}**   Sufficient evidence supports Defendant's tampering with evidence conviction. When the investigation was conducted, wet towels smelling of bleach were found in Victim's washer, and bleach was found smeared around the house and garage in close proximity to Victim's blood.  The floor had been recently mopped.  The jury could have reasonably concluded that Defendant was the one who put the bleach-soaked towels in the washer and used bleach to clean Victim's body.  In turn, the jury could have reasonably concluded that Defendant used bleach to destroy blood evidence with the intent to avoid being implicated in Victim's murder.  *See State v. Guerra*, 2012-NMSC-027, ¶ 13, 284 P.3d 1076 ("[I]ntent is subjective and is almost always inferred from other facts in the case" (quoting *State v. Silva*, 2008-NMSC-051, ¶ 17, 144 N.M. 815, 192 P.3d 1192)).  All the elements of the jury instruction for tampering with evidence were met with both direct and circumstantial evidence, and accordingly, we affirm Defendant's conviction for aggravated burglary with a deadly weapon.

## III.   CONCLUSION

**{27}**   For the foregoing reasons, we affirm Defendant's convictions.

**{28}   IT IS SO ORDERED.**

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Chief Justice**

**BARBARA J. VIGIL, Justice**

**MICHAEL E. VIGIL, Justice**

**DAVID K. THOMSON, Justice**